Belknap
No. 81-081

MARY E. BRENNAN & a.

v.

WINNIPESAUKEE FLAGSHIP CORPORATION & a.

June 11, 1982

*John S. Kitchen,* of Laconia, by brief and orally, for the plaintiffs.

*Orr & Reno,* of Concord (*William L. Chapman* on the brief and orally), for the defendant Winnipesaukee Flagship Corporation.

*Wescott, Millham & Dyer,* of Laconia (*Roger R. Burlingame* on the brief and orally), for the defendant Town of Meredith.

BROCK, J.   This is an appeal from the Meredith Zoning Board of

Adjustment's decision that the defendant Winnipesaukee Flagship Corporation's (WFC) proposal to build a new home-port facility for a cruiseship on its property in Meredith constituted a permitted use under the town's zoning ordinance.

The matter first came before the zoning board on an application for a variance by the defendant. The zoning board decided that no variance was required because the defendant's proposed facility was an "outdoor recreational facility" and, therefore, was a permitted use under the zoning ordinance. The plaintiffs then appealed to the superior court under RSA 31:77 (Supp. 1981) and requested injunctive relief pursuant to RSA 491:7.

After an initial hearing in the superior court, the Master (*Robert A. Carignan*, Esq.) recommended that the case be remanded to the zoning board for review consistent with his recommendations. On remand, the zoning board reaffirmed its prior decision that the defendant's project was a permitted use under the ordinance. The plaintiffs' request for a rehearing was denied, and they again appealed to the superior court pursuant to RSA 31:77. The master then concluded that the zoning board had properly addressed all of the issues remanded to it and that its findings and decision were neither unreasonable nor unlawful. *See* RSA 31:78 (Supp. 1981). The Trial Court (*Batchelder*, J.) approved the master's recommendations, and the plaintiffs appealed. We reverse.

The defendant, WFC, acquired a sixteen-acre tract of land on Lake Winnipesaukee, in the town of Meredith, which it planned to use as the new home-port facility for one of its cruiseships, the *Mount Washington*. WFC is a New Hampshire corporation licensed to carry passengers on Lake Winnipesaukee. The cruise season for the *Mount Washington* is from Memorial Day weekend through October 15. Two cruises per day, departing from a dock at Weirs Beach, are scheduled during the entire period, with an additional cruise per day between June 15 and Labor Day. In addition, moonlight cruises are run four times each week from July 1 to Labor Day. The night cruises offer a Dixieland Jazz Band, entertainment, dancing and liquor. No changes in schedules or in the duration of the season are anticipated should the home-port facility relocate to Meredith.

Having a capacity of 1,250 passengers, the *Mount Washington* is one of the largest excursion vessels in the United States. It averages approximately 350 passengers for its daytime cruises and occasionally carries in excess of 600 passengers on a cruise.

The plaintiff Mary E. Brennan owns property on Lake Winnipesaukee abutting the WFC property to the south, and the plaintiff Stephen Watts resides across the bay from it. The other plaintiffs

are associations of property owners in Meredith. The Town of Meredith has been joined as a defendant in these proceedings.

WFC's plans for development of its land in Meredith include a 175-foot docking facility for the *Mount Washington*, a parking lot for 400 cars, a three-lane access road, looproads to the docking facility for buses and cars, picnic areas, and a two-level structure attached to the docking facility which would house a waiting area, snack bar, ticket offices, restrooms, storage space, and a loading area.

The question before us is whether the zoning board was correct in its determination that the defendant's projected use of its property was a permitted use under the Meredith zoning ordinance.

■ Construction of the terms of a zoning ordinance is a question of law upon which this court is not bound by the interpretations of the zoning board. *Win-Tasch Corp. v. Town of Merrimack,* 120 N.H. 6, 10, 411 A.2d 144, 147 (1980); *Trottier v. City of Lebanon,* 117 N.H. 148, 150, 370 A.2d 275, 276–77 (1977); RSA 31:78.

Given the definitions and the structure of the Meredith zoning ordinance, it is clear that in order to be allowed, a "permitted use" must comply with the conditions and restrictions specifically applicable to the "forestry and rural district" and with other provisions of the zoning ordinance having general applicability. The Meredith zoning ordinance, as revised in March 1979, establishes five districts: the forestry and rural district, the residential district, the island district, the commercial and light industrial district, and the wetlands conservation district. MEREDITH ZONING ORDINANCE, art. V A (1979). For each of the five districts, the organizational structure of the ordinance is substantially the same. The type and character of the land use permitted in each district is described generally in an introductory paragraph, which also sets forth various objectives of land use in the district, and thereafter a list of "permitted uses" and "special exceptions" is set out for each district. The term "permitted use" is defined in article VIII as: "[a] use that is allowable in the District as a matter of right under the terms of the Ordinance." Most of the real estate owned by WFC is within the forestry and rural district. This district is described in article V D(1) (A) of the ordinance:

> "*Forestry and Rural District*
>
> This area is limited to agricultural, forestry, rural residential and certain other *non intensive* land uses. The purpose of this district is to prevent premature develop-

ment of land, to retain certain areas for *non intensive* uses, to prevent the development where it would be a burden on the town, and to retain areas for open space. . . . " (Emphasis added.)

Under the "permitted uses" listed for this district are "outdoor recreational facilities." MEREDITH ZONING ORDINANCE, art. V D(1) (A)7 (1979).

If we assume, without deciding, that the defendant's proposed use of its real estate qualifies as an "outdoor recreational facility," resolution of the dispute before us will depend on whether the proposed use is "non intensive" within the meaning of the Meredith zoning ordinance. If the use is not "non intensive," it is not a permitted use.

■ In order to determine whether a proposed use is "non intensive," it must be compared with other uses that have been permitted in the particular district. Utilizing this comparative approach ensures uniformity and harmony in the district and is consistent with the principle that "one must look to the ordinance as a whole and attempt to discern the meaning intended by the framers." *Trottier v. City of Lebanon,* 117 N.H. at 150, 370 A.2d at 276.

The superior court was correct when it initially remanded this matter to the zoning board with a recommendation that the zoning board examine whether the defendant's proposed use complied with the objective of "non intensive" use, as contemplated by the framers of the ordinance. Although the zoning board reconsidered its original decision in the light of the recommendations of the trial court, we hold that it erred as a matter of law in finding that the defendant's proposed use was a "non intensive" use and therefore permitted under the zoning ordinance.

Having reviewed the record before us, we conclude that the intensity of use proposed by the defendant for its 16 acres of land differs substantially from and compares unfavorably with the intensity of use of other properties in the district. The proposed additional highway lanes and traffic control lights, the large number of parking spaces, the passenger capacity of the *Mount Washington,* and the number of cruises scheduled per day and night all indicate a substantially more intensive use of the property, albeit seasonal, than the intensity of use involved in such other permitted uses in the district as a church, a camping park, a stable or riding academy, a lodging house and rental cottages, or even a recreational camp for children.

■ The use of its land proposed by the defendant is not "non

intensive" within the meaning of article V D(1) (A) of the Meredith Zoning Ordinance. Accordingly, because the decision of the zoning board, and that of the trial court in upholding it, were based upon an error of law, the decree of February 12, 1981, is vacated and the case is remanded to the trial court for disposition consistent with this opinion.

*Reversed and remanded.*

BATCHELDER, J., did not sit; DOUGLAS, J., dissented; the others concurred.

DOUGLAS, J., dissenting. Because I cannot conclude that the zoning board erred in determining the use to be compatible as a non-intensive "outdoor recreational facility," I respectfully dissent.