Merrimack
No. 90-335

GABRIEL COHEN

v.

TOWN OF HENNIKER

July 8, 1991

*Charles H. Morang,* of Concord, by brief and orally, for the plaintiff.

*Nixon, Hall & Hess P.A.,* of Manchester (*David W. Hess* on the brief and orally), for the defendant.

JOHNSON, J.   The plaintiff appeals an order of the Superior Court (*McGuire,* J.) upholding the denial by the Henniker Planning Board

(the board) of his application for subdivision approval to convert seven apartment units into condominiums. The plaintiff argues that the board's denial was improper, given his prior nonconforming use of the property. We agree and, therefore, reverse the order of the superior court.

The facts in this case are straightforward. The plaintiff owns two apartment buildings containing seven rental units. The buildings are located on a single 1.38-acre lot on Flanders Road in Henniker. The town of Henniker had no zoning ordinances when the buildings were constructed.

On July 8, 1988, the plaintiff applied to the board for subdivision approval to convert the seven rental apartments into condominiums. The property in question did not satisfy the zoning requirements for its zone at the time of the application, being deficient as to both lot size and frontage. Conformance with the zoning ordinance is required for subdivision approval. *See* HENNIKER SUBDIVISION REGULATIONS § 13 ("[t]he proposed subdivision shall conform to the Zoning Ordinance of the Town of Henniker").

The board voted to deny the application on February 13, 1989, "on the grounds that the proposal does not conform with the lot size requirements of the zoning ordinance." The plaintiff filed a petition for certiorari with the superior court, arguing that the denial of his application violated RSA 356-B:5, which governs municipal regulation of condominium development, and was improper because the apartments enjoyed nonconforming use status. In denying the plaintiff's petition, the superior court ruled that the town had complied with RSA 356-B:5. It also found the plaintiff's nonconforming use argument to be without merit. "The non-conforming status goes to the use of the lot and buildings as apartment rentals. The nature of condominium ownership is simply a different use . . . ." This appeal followed.

■ Under the applicable standard of review, we will uphold the decision of the superior court unless that decision is not supported by the evidence or is legally erroneous. *Condos East Corp. v. Town of Conway*, 132 N.H. 431, 435, 566 A.2d 1136, 1139 (1989). The plaintiff argues that the action of the board, and thus the order of the superior court, was contrary both to the protection historically granted to prior nonconforming uses and to RSA 356-B:5. Before addressing the specifics of the plaintiff's arguments, we must examine their legal foundations.

■ The doctrine of nonconforming uses has been summarized by one New Hampshire commentator as follows:

"A use of land which, at the time a restriction on that use went into effect, was established (or 'vested'), and has not been discontinued or abandoned, can continue indefinitely, unless it includes activity which is a nuisance or harmful to the public health and welfare; but the use cannot be changed or substantially expanded without being brought into compliance."

Waugh, *"Grandfathered"—The Law of Nonconforming Uses and Vested Rights*, 31 N.H.B.J. 17, 19 (1990); *accord New London Land Use Assoc. v. New London Zoning Board*, 130 N.H. 510, 515–17, 543 A.2d 1385, 1387–88 (1988). The right to continue a nonconforming use is recognized by the New Hampshire Constitution, N.H. CONST. pt. I, arts. 2 and 12, and by New Hampshire statute, RSA 674:19. *New London Land Use Assoc., supra* at 516, 543 A.2d at 1387.

The parties do not dispute that the plaintiff's property enjoys nonconforming use status. Thus, the plaintiff may continue to own the seven residential units and to rent them to tenants, notwithstanding the requirements of the Henniker Zoning Ordinance. This fact does not, however, directly answer the question raised by this appeal: whether the board had the authority to deny the plaintiff's subdivision approval to convert the rental units into condominiums.

The plaintiff was required to seek subdivision approval. Both State statute and local regulations define "subdivision" as including "the division . . . of land . . . for the purpose, whether immediate or future, of . . . condominium conveyance." RSA 672:14; HENNIKER SUBDIVISION REGULATIONS art. 2, § 2.17. However, the board's discretion to deny subdivision approval for condominium projects is limited by RSA 356-B:5, which provides, in part:

"Municipal Ordinances. No zoning or other land use ordinance shall prohibit condominiums as such by reason of the form of ownership inherent therein. Neither shall any condominium be treated differently by any zoning or other land use ordinance which would permit a physically identical project or development under a different form of ownership. No subdivision ordinance in any city or town shall apply to any condominium or to any subdivision of any convertible land, convertible space, or unit unless such ordinance is by its express terms made applicable thereto. Nevertheless, cities and towns may provide by ordinance that proposed conversion condominiums and the use thereof which do not conform to the zoning, land use and site plan regulations of

the respective city or town in which the property is located shall secure a special use permit, a special exception, or variance, as the case may be, prior to becoming a conversion condominium."

As a preliminary matter, we note that the legislature's references to "ordinances" in the above statute must be interpreted to include both the ordinances themselves and regulations promulgated pursuant to such ordinances, so as to be consistent with the statute's context. *See State v. New Hampshire Gas & Electric Co.*, 86 N.H. 16, 21, 163 A. 724, 727 (1932) (words of statute are to be read in relation to their context); *see also* RSA 21:1 (disallowing construction of statute repugnant to its context).

According to RSA 356-B:5, no condominium may "be treated differently by any zoning or other land use ordinance which would permit a physically identical project or development under a different form of ownership." In the case at bar, the project "physically identical" to the proposed condominiums is the existing rental units prior to conversion. As stated above, the use of the units as rental properties is a protected nonconforming use. Thus, RSA 356-B:5 would indicate that condominium conversion would have to be allowed to avoid disparate treatment.

RSA 356-B:5 also states that "cities and towns may provide . . . that proposed conversion condominiums and the use thereof which do not conform to . . . [local] regulations . . . shall secure a special use permit, special exception or variance." Thus, a municipality may require such a permit, exception, or variance prior to conversion even where there exists a protected nonconforming use. However, to be consistent with the rest of the statute, such a requirement may only be denied if the conversion would have an actual effect on the use of the land. *See Natrella v. Arlington Cty. Bd. of Zoning App.*, 231 Va. 451, 462, 345 S.E.2d 295, 302 (1986). In *Natrella*, the Supreme Court of Virginia was presented with a factual situation similar to that now before us, and a statute, VA. CODE ANN. § 55–79.43, then essentially identical to RSA 356-B:5. The *Natrella* court reasoned that the denial of a variance, where there was no impact on land use, was incompatible with the special protection afforded condominiums in the statute. *Id.* at 461–62, 345 S.E.2d at 301–02. We may no more ignore a portion of RSA 356-B:5 than the *Natrella* court could ignore a portion of the Virginia statute. *See Merrill v. Great Bay Disposal Serv.*, 125 N.H. 540, 543, 484 A.2d 1101, 1103 (1984) (all of the words of a statute must be given effect); *Peck v. Jenness*, 48 U.S. 612, 623 (1849) ("[o]ne portion of a statute

should not be construed to annul or destroy what has been clearly granted by another"). Therefore, we concur with the analysis of the *Natrella* court.

■ Interpreting RSA 356-B:5 to preclude denial of a special use permit, special exception, or variance where there is no change in land use is supported by our cases on nonconforming uses. Justice Grimes, in his dissent in *Isabelle v. Newbury*, 114 N.H. 399, 403, 321 A.2d 570, 573 (1974), stated that "[a]uthority is overwhelming that a mere change from tenant occupancy to owner occupancy is not an extension of a non-conforming use." This statement was adopted by the majority of the court in *New London Land Use Assoc.*, 130 N.H. at 516, 543 A.2d at 1388. *See also Town of Seabrook v. Tra-Sea Corp.*, 119 N.H. 937, 942, 410 A.2d 240, 243 (1979) (mere change in ownership would not significantly increase municipal burdens). The conversion of apartment units into condominium units is not necessarily a change in use. If the conversion would in fact have an effect on land use, this may constitute a change in or expansion of use; in such a case, preventing conversion would not conflict with the doctrine of nonconforming uses, and would not violate RSA 356-B:5. On the other hand, if, for example, a planning board may deny a variance to a landowner seeking to convert apartments to condominiums, where the conversion would have no effect on land use, that landowner is prevented from taking full advantage of his or her nonconforming use.

■ In the case at hand, section 2 of the Henniker Subdivision Regulations expressly makes those regulations applicable to condominiums, thereby complying with the third sentence of RSA 356-B:5 ("[n]o subdivision ordinance . . . shall apply to any condominium . . . unless such ordinance is by its express terms made applicable thereto"). Section 13 of the Henniker Subdivision Regulations makes conformance with the Henniker Zoning Ordinance a requirement for subdivision approval, including condominium conversion; it also allows subdivision approval "[w]here strict conformity to these subdivision regulations would cause undue hardship or injustice to the owner of the land." These provisions comport with the fourth sentence of RSA 356-B:5, discussed above. Thus, the board was authorized to deny the plaintiff subdivision approval only if the condominium conversion would affect land use. Because neither the board nor the superior court made a finding that conversion of the plaintiff's property into condominiums would affect land use, we reverse the decision of the superior court and remand this case to the board.

*Reversed and remanded.*

All concurred.