Strafford
No. 94-095

CHARLES AND DORIS HEALEY

v.

TOWN OF NEW DURHAM ZONING BOARD OF ADJUSTMENT

GULLMAR AND SHIRLEY NELSON

v.

TOWN OF NEW DURHAM ZONING BOARD OF ADJUSTMENT

September 22, 1995

*McNeill & Taylor, P.A.*, of Dover (*Malcolm R. McNeill, Jr.* and *Lynne M. Dennis* on the brief, and *Mr. McNeill* orally), for plaintiffs Charles and Doris Healey.

*Ouellette, Hallisey, Dibble and Tanguay, P.A.*, of Dover (*William L. Tanguay* on the brief and orally), for plaintiffs Gullmar and Shirley Nelson.

*Nighswander, Martin & Mitchell, P.A.*, of Laconia, for the defendant, filed no brief.

JOHNSON, J. The question presented is whether a certain house, garage, and paved driveway violate the Town of New Durham Zoning and Land Use Ordinance (zoning ordinance). We hold that they do and affirm the decision of the Superior Court (*Fauver*, J.).

The following facts are not in dispute. Plaintiffs Gullmar and Shirley Nelson own land on the shore of Merrymeeting Lake in New Durham. In 1988, the Nelsons applied to the Town of New Durham Zoning Board of Adjustment (ZBA) for three variances from certain setback requirements in the zoning ordinance. In their application they proposed to construct a one-family dwelling, a one-car garage, and a sewage system. They submitted to the ZBA a lot layout plan, which depicted a proposed dwelling with two bedrooms, a garage, and a shed. The plan did not depict a driveway. The ZBA approved the plan and granted the Nelsons' variance requests based upon the terms of the submitted application and layout plan. The Nelsons built a house and a garage in 1988.

In March 1990, the Town of New Durham (town) enacted a "Shorefront Conservation Area" amendment (conservation amendment) to its zoning ordinance. Upon passage of the conservation amendment, the Nelsons' property became part of a newly-established shorefront district. Within this district, the conservation amendment prohibited multi-family dwellings and required that "[n]ot more than 20% of a lot shall be covered by impervious surface. Ten percent building-ten percent parking." TOWN OF NEW DURHAM ZONING ORDINANCE AMENDMENT, art. IV, § A(2). The Nelsons paved a driveway after the passage of the conservation amendment; the parties dispute whether the paving occurred in October 1990 or 1991. The Nelsons concede that the impervious, paved surface of their driveway exceeds the limit imposed by the conservation amendment. The driveway begins at the road, extends past the garage, and ends beside the Nelsons' house.

Plaintiffs Charles and Doris Healey are abutters to the Nelsons' property. The Nelsons' driveway runs along the border to their lot. On August 12, 1992, the Healeys wrote a letter to the town selectmen and the ZBA complaining that the Nelsons had violated several provisions of the zoning ordinance.

The letter led to a hearing before the ZBA. The ZBA determined that the Nelsons' house was a one-family dwelling, but that the Nelsons had violated the impervious surface limit in the conservation amendment by paving a driveway and had deviated from the terms of their variance by building a two-car garage. The ZBA denied the parties' motions for rehearing, and both parties appealed to the superior court.

The superior court took a view of the Nelsons' property and reviewed the record transferred by the ZBA. The court concluded that the Nelsons had violated the terms of the zoning ordinance, their variance, and their building permit by building a two-family dwelling and a two-car garage, and by installing a paved driveway. The court vacated the ZBA decision regarding the house, ordered the Nelsons to modify their garage, and remanded to the ZBA for a determination of what portions of the impervious paved surface needed to be removed to comply with the conservation amendment. The Nelsons appealed.

On appeal the Nelsons argue that their house is a one-family dwelling and that the trial court's finding to the contrary is clearly erroneous because use of their house as a two-family dwelling would be impractical and would violate various safety codes. The Nelsons do not contest that they built a two-car garage but argue that because the zoning ordinance does not prohibit two-car garages, they were entitled to build one. They argue that they had a vested right to pave their driveway or, in the alternative, that the town is estopped from enforcing the impervious surface provision against them. In addition, they argue that the Healeys' complaints are barred by laches. Finally, the Nelsons contend that the trial court did not apply the proper deference to the ZBA's factual findings. We do not address this procedural argument because the trial court's factual findings are consistent with those of the ZBA, and because we decide the issues as a matter of law.

## I. House

We first address the question of whether the Nelsons' house is a one- or two-family dwelling. We will uphold the trial court's factual findings unless they are unsupported by the evidence. *See Cohen v. Town of Henniker*, 134 N.H. 425, 426, 593 A.2d 1145, 1146 (1991).

The trial court's factual findings regarding the composition of the Nelsons' house are consistent with those of the ZBA. The house has three floors. The bottom floor comprises a full kitchen, a full bathroom, a living room, and two rooms that the trial court found "could be easily converted [into bedrooms] by the placement of beds or other sleeping facilities." The middle floor, which the court determined to be the "primary living space," also comprises a full kitchen, a full bathroom, and two bedrooms. Another full bathroom is located on the top floor. The bottom level can be entered without passing through the upper levels, and the upper levels can be entered without passing through the bottom level. We adopt these findings because they are amply supported by the record. *See Cohen*, 134 N.H. at 426, 593 A.2d at 1146.

Interpretation of a zoning ordinance is a question of law for this court, and we are not bound by the ZBA or trial court's application of zoning provisions to specific facts. *See Brennan v. Winnipesaukee Flagship Corp.*, 122 N.H. 524, 526, 446 A.2d 1175, 1177 (1982).

The 1988 zoning ordinance defines "dwelling" as "a building for eating, sleeping and living" and "dwelling unit" as "an area within a building complex to be used by one person or family with its own and separate bath, toilet and kitchen facilities." TOWN OF NEW DURHAM ZONING AND LAND USE ORDINANCE, art. XII(s), (t).

> In general, the traditional rules of statutory construction will govern here. Thus, the words and phrases of [an ordinance] should always be construed according to the common and approved usage of the language, but where the [ordinance] defines the term in issue, that definition will govern. Further, when the language of [the ordinance] is plain and unambiguous, we need not look beyond the [ordinance] itself for further indications of legislative intent.

*Lemm Development Corp. v. Town of Bartlett*, 133 N.H. 618, 620, 580 A.2d 1082, 1083 (1990) (quotations, citations, and brackets omitted).

■ The trial court's view clearly revealed that the Nelsons' house comprises two areas, each "with its own separate bath, toilet and kitchen facilities." TOWN OF NEW DURHAM ZONING AND LAND USE ORDINANCE, art. XII(t). Our task is to interpret the phrase "to be used by one person or family," *id. See Brennan*, 122 N.H. at 526, 446 A.2d at 1177. The word "be," when used with an infinitive, expresses "futurity" or "arrangement in advance." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 189 (unabridged ed. 1961). We therefore must decide whether future use is determined objectively, *i.e.*, by looking at the structure's internal composition, or subjectively, *i.e.*, by divining the Nelsons' intent. A subjective test could lead to unjust results because identical houses could be classified differently. *Cf. Raudonis v. Ins. Co. of North America*, 137 N.H. 57, 61, 623 A.2d 746, 749 (1993) (avoiding interpretation that would lead to absurd result). Moreover, the mere existence of unusually large houses in a one-family residence district, irrespective of the use to which the houses are put, poses a danger of "overcrowding of land," the avoidance of which is a stated objective of the town's zoning ordinance. *See* TOWN OF NEW DURHAM ZONING AND LAND USE ORDINANCE, art. I; *cf. Sullivan v. Investment Trust Co.*, 89 N.H. 112, 116, 193 A. 225, 227 (1937). We conclude that under the zoning ordinance, classification as a one- or

multiple-family dwelling hinges on the dwelling's adaptability for use, as adjudged by the number of separate areas within containing a bath, toilet, and kitchen that could be used by one person or family.

■ We note that in its analysis, the trial court looked to the definition of "dwelling unit" found in the section of the town's building code relating to fire control. The fire control section explicitly provides that the defined terms apply only in that section. The trial court thus erred by considering the definitions in the safety code rather than those in the zoning ordinance.

■■ The Nelsons contend that their house is not a two-family dwelling because it has only one heating system, one hot water system, one electrical system, and one septic system, and because if characterized as a two-family dwelling, the house violates various safety codes. We disagree. As noted above, the ordinance defines dwellings according to the number of separate baths, toilets, and kitchen facilities. Accordingly, we affirm the trial court's determination that the Nelsons violated the zoning ordinance by constructing a two-family residence.

## II. Garage

■ We next address the Nelsons' claim that because the zoning ordinance establishes setback requirements but does not restrict garage capacity, whether their garage can accommodate more than one car is inconsequential. Thus they appear to argue that the terms and conditions of their variance are meaningless. We disagree.

The ZBA is empowered to grant variances from the terms of a zoning ordinance "so that the spirit of the ordinance shall be observed and substantial justice done." RSA 674:33, I(b) (1986). This broad statutory language authorizes the ZBA to attach reasonable conditions to such variances. *Vlahos Realty Co. v. Little Boar's Head District*, 101 N.H. 460, 463, 146 A.2d 257, 260 (1958) (decided under prior law). The Nelsons' variance from the setback requirements was conditioned upon the requirement that they build a one-car garage; their construction of a two-car garage was unauthorized. We conclude that the Nelsons violated the requirements of their variance by building a two-car garage within the setback.

The Nelsons also argue that the trial court erred by affirming the ZBA because the ZBA examined whether the Nelsons had violated their variance instead of limiting its examination to the question of whether the Nelsons had violated the zoning ordinance. We need not address the propriety of this examination because without a vari-

ance the Nelsons' garage does not conform to zoning ordinance requirements.

The zoning ordinance provides that "[n]o new building shall be less than forty[-]five (45) feet from the center of the traveled portion of any public road or fifteen (15) feet from the property line of an abutter." TOWN OF NEW DURHAM ZONING AND LAND USE ORDINANCE, art. IV(B)(2). That the Nelsons' garage is located within this setback is not in dispute. The Nelsons' garage therefore does not conform to the zoning ordinance requirements. If we ignore the Nelsons' variance and look only at the zoning ordinance, we find a clear violation of the setback provision. The trial court's conclusion that the Nelsons violated the zoning ordinance was legally correct. *See Cohen*, 134 N.H. at 426, 593 A.2d at 1146.

*III. Paving*

■ We now turn to the question of whether the Nelsons had acquired a vested right to pave their property. The Nelsons argue that the approved construction plan, which the Nelsons had submitted with their building permit application in 1988, included a paved driveway. They argue that by the time the conservation amendment took effect in 1990, they had already built the house and garage and therefore had a vested right to complete the project by paving their driveway.

> [A] landowner who reasonably relies, in good faith, upon the absence of any regulation that would prohibit a proposed project acquires a vested right to complete the project where the owner (1) has engaged in substantial construction on the property, or (2) has incurred substantial liabilities directly related to his good faith reliance.

*Hussey v. Town of Barrington*, 135 N.H. 227, 232, 604 A.2d 82, 85 (1992). For purposes of determining whether a vested right exists, we examine the facts as they were when the new conservation amendment first took effect. *See Cohen*, 134 N.H. at 427, 593 A.2d at 1147 (standard for reviewing nonconforming uses). The landowner who claims a vested right bears the burden of proving all necessary elements establishing that right. *New London v. Leskiewicz*, 110 N.H. 462, 467, 272 A.2d 856, 860 (1970). We uphold the trial court's findings of fact unless (1) the trial court did not properly defer to the ZBA's fact finding, *see* RSA 677:6 (1986), or (2) its findings are unsupported by the evidence, *see Cohen*, 134 N.H. at 426, 593 A.2d at 1146.

The parties agree that if the approved construction plans included a paved driveway, the Nelsons would have acquired a vested right to

pave after 1990 despite the conservation amendment. They disagree, however, as to whether the approved plans included a driveway. We uphold the trial court and the ZBA's determination that they did not.

At the time of the ZBA hearing, the Nelsons' building plan was missing from the official files. The lot layout plan, however, which had been submitted along with the variance application, did not include a driveway. The code enforcement officer informed the ZBA that although he had thought the Nelsons were intending to pave, "the additional paving was not shown in any of Nelson's plans presented to the ZBA in 1988." At the ZBA hearing, the Nelsons produced an alleged copy of the building plan that included a paved driveway. But the ZBA, which had the opportunity to gauge the demeanor and credibility of the witnesses, found that "there is no credible reliable evidence that the paving alongside the [garage] or near to the house was part of the original permit and plan . . . ." The trial court properly deferred to this finding, *see* RSA 677:6, and the finding is supported by the evidence, *see Cohen*, 134 N.H. at 426, 593 A.2d at 1146.

## IV. Estoppel

The Nelsons contend that both the code enforcement officer and the town road agent authorized them to pave a driveway, that they relied on these authorizations, and that the town is therefore estopped from enforcing the conservation amendment's prohibition against them.

"Although municipal corporations may indeed be subject to estoppel, the law does not favor its application against municipalities. This is especially true when a valuable public interest may be jeopardized by applying the doctrine of estoppel against the municipality." *Hansel v. City of Keene*, 138 N.H. 99, 102, 634 A.2d 1351, 1353 (1993) (citations omitted). "The doctrine of estoppel has been applied to municipalities to prevent unjust enrichment and to accord fairness to those who bargain with the agents of municipalities for the promises of the municipalities." *Aranosian Oil Co. v. City of Portsmouth*, 136 N.H. 57, 59, 612 A.2d 357, 358 (1992) (quotations omitted).

A party claiming estoppel must prove four elements:

> first, a representation or concealment of material facts made with knowledge of those facts; second, the party to whom the representation was made must have been ignorant of the truth of the matter; third, the representation must have been made with the intention of inducing the

other party to rely upon it; and fourth, the other party must have been induced to rely upon the representation to his or her injury.

The reliance by the party bringing the estoppel claim on the representation or concealment must have been reasonable. Reliance is unreasonable when the party asserting estoppel, at the time of his or her reliance or at the time of the representation or concealment, knew or should have known that the conduct or representation was either improper, materially incorrect or misleading.

*City of Concord v. Tompkins*, 124 N.H. 463, 467–68, 471 A.2d 1152, 1154 (1984) (citations omitted). In addition, estoppel may be invoked against a town as a result of conduct or statements by town officials only if the conduct or statements were authorized. *Id.* at 468, 471 A.2d at 1155.

Therefore, a party bringing an estoppel claim against the [town], based on the representations or conduct of a [town] official, cannot rely on the official's asserted or assumed exercise of authority not possessed. Nor can a party rely on the apparent authority of a [town] official, to establish an estoppel claim, when the official acted outside his actual authority.

*Id.* at 469, 471 A.2d at 1155 (quotations and citation omitted).

■ The Nelsons bear the burden of proving the elements of their estoppel claim; we will uphold the trial court's denial of that claim "unless it is unsupported by the evidence or erroneous as a matter of law." *Turco v. Town of Barnstead*, 136 N.H. 256, 261, 615 A.2d 1237, 1239 (1992) (quotation omitted). Despite their assertions, the Nelsons did not prove that any agent of the town ever represented that the town would allow them to cover more than twenty percent of their lot with impervious surfaces in contravention of the 1990 conservation amendment. The Nelsons argue that when the code enforcement officer renewed their building permit in 1989, he represented that they could pave their driveway. But the events of 1989 are irrelevant because the Nelsons did not begin paving until after the enactment of the conservation amendment in 1990. A representation that an undertaking was permissible in 1989 has no bearing on whether that same undertaking would be permissible if begun after new regulations were enacted in 1990.

■ The Nelsons also assert that after the conservation amendment's enactment the town road agent approved their plans to pave

the driveway. Aside from the Nelsons' assertions, the record is devoid of any evidence tending to prove this claim. Moreover, reliance on any such representations made by the road agent would not be reasonable because the road agent lacked the authority to exempt the Nelsons from the conservation amendment requirements. *See id.* at 262, 615 A.2d at 1239. In addition, had the Nelsons conducted a reasonably diligent inquiry they would have learned that a paved driveway would violate the conservation amendment. *See id.* at 264, 615 A.2d at 1240.

*V. Laches*

The trial court ruled that the doctrine of laches did not apply to bar the Healeys' claims. "Laches is an equitable doctrine, the application of which is a question of fact for the trial court. Therefore, we will not overturn the superior court's decision unless we find it is unsupported by the evidence or erroneous as a matter of law." *State v. Weeks*, 134 N.H. 237, 240, 590 A.2d 614, 616 (1991) (citation omitted).

"Laches, unlike limitation, is not a mere matter of time, but is principally a question of the inequity of permitting the claim to be enforced—an inequity founded on some change in the conditions or relations of the property or the parties involved." *Wood v. General Elec. Co.*, 119 N.H. 285, 289, 402 A.2d 155, 157 (1979) (quotation omitted). Because it is an equitable doctrine, "laches will constitute a bar to suit only if the delay was unreasonable and prejudicial." *Jenot v. White Mt. Acceptance Corp.*, 124 N.H. 701, 710, 474 A.2d 1382, 1387 (1984) (citation omitted). In determining whether the doctrine should apply to bar a suit, the court should consider "the knowledge of the plaintiffs, the conduct of the defendants, the interests to be vindicated, and the resulting prejudice." *N.H. Donuts, Inc. v. Skipitaris*, 129 N.H. 774, 785, 533 A.2d 351, 357 (1987) (quotation omitted).

The propriety of applying laches hinges upon the particular facts of each case. *Bogardus v. Zinkevicz*, 134 N.H. 527, 530, 596 A.2d 722, 723 (1991). In our analysis of laches, we will examine separately the complaints regarding the Nelsons' house, garage, and pavement.

We do not decide whether laches applies to bar the Healeys' claim that the Nelsons built a two-family residence. The trial court did not order specific relief for the Nelsons' violation of the prohibition of multi-family dwellings. Because we do not know what enforcement of the conservation amendment against the Nelsons would entail, we cannot determine whether such enforcement would be inequitable. *See Wood*, 119 N.H. at 289, 402 A.2d at 157. We note, however, that

the Healeys' delay regarding the Nelsons' house was not unreasonable.

■ Although the Healeys did not protest the structure of the Nelson house until four years after it had been built, their delay was not unreasonable. "[L]aches, as a general rule, cannot be imputed to a party who is ignorant of the facts creating his right." *North Bay Council, Inc. v. Grinnell*, 123 N.H. 321, 325, 461 A.2d 114, 116 (1983). "[T]he burden is on [the party asserting laches] to show that the complainant's delay in bringing a complaint was not merely a result of the lack of awareness of the nature of the conduct, but that the complainant, after becoming aware of the misconduct, slept on his rights." *Appeal of Plantier*, 126 N.H. 500, 508, 494 A.2d 270, 274 (1985) (quotation omitted) (applying "laches-type" doctrine to medical license revocation).

The Nelsons did not meet this burden. Under the zoning ordinance, a structure's designation as a one-family dwelling partly depends on its internal composition. From the outside, the Healeys could not discern whether the Nelsons' house was a one- or two-family dwelling; they could only speculate. Before the trial court took a view of the premises, therefore, the Healeys were uncertain as to the number of kitchens, bathrooms, and bedrooms within the house.

■ Laches does not defeat the Healeys' protest of the two-car garage because the Nelsons engaged in "conscious wrongdoing." *N.H. Donuts, Inc.*, 129 N.H. at 785, 533 A.2d at 357 (quotation omitted). "The propriety of applying the doctrine of laches depends upon the conduct and situation of all the parties, not solely upon those of one." *Id.* at 783, 533 A.2d at 356 (quotation omitted). Knowing and deliberate violation of a land use restriction by the Nelsons is conduct that changes the equities in the Healeys' favor. *See id.* at 786, 533 A.2d at 357.

Despite the terms of their variance, the Nelsons constructed a two-car garage. The trial court determined that the garage "contains two separate bay areas, both accessed by a garage type overhead door" and that "both of these bays have pavement leading to their openings which appear to be driveways and which the Nelsons have represented to constitute driveways." The question of whether the Nelsons were intending to build a one- or two-car garage was not incidental to their variance; it was discussed during the application process. Nevertheless, in constructing this garage, the Nelsons ignored the clear terms of their variance. In face of such disregard for the zoning ordinance, the Nelsons cannot now invoke laches to bar the Healeys' complaint.

Laches is an equally ineffective defense to the Healeys' complaint regarding the impervious surface violation. The party invoking a laches defense has the burden of demonstrating the prejudice caused by the delay. *Jenot*, 124 N.H. at 710, 474 A.2d at 1387. The Nelsons have not met this burden.

The Healeys contend that the pavement "was not installed over a lengthy time period, and once it was laid down, there is no indication from the Nelsons as to what prejudice could occur to them whether its removal was sought the next day or at a much later time." We agree. Under the circumstances of this case, the evidence supports the superior court's finding that the delay was not unreasonably long or prejudicial.

*Affirmed.*

All concurred.