Rockingham
No. 2006-598

TOWN OF RYE BOARD OF SELECTMEN

v.

TOWN OF RYE ZONING BOARD OF ADJUSTMENT

Argued: April 3, 2007
Opinion Issued: June 26, 2007

*Michael L. Donovan*, of Concord, by brief and orally, for the plaintiff.

*Bosen & Springer, PLLC*, of Portsmouth (*Jonathan S. Springer* on the brief and orally), for the defendant.

*Cronin & Bisson, P.C.*, of Manchester (*John F. Bisson* and *John G. Cronin* on the brief, and *Mr. Cronin* orally), for the intervenor, 228 Maple Street, LLC.

GALWAY, J. The plaintiff, the Town of Rye Board of Selectmen (Selectmen), appeals an order of the Superior Court (*Morrill*, J.) upholding a decision of the Town of Rye Zoning Board of Adjustment (ZBA) to allow the intervenor, 228 Maple Street, LLC (228 Maple), to convert buildings that it owns to condominiums. We affirm.

The following facts are undisputed. 228 Maple owns a 1.29-acre parcel in Rye on which ten cottage-style buildings and one building containing a rental office and an apartment are located. The cottage-style buildings range in size from 347 to 766 square feet and have been rented seasonally. The Town of Rye Zoning Ordinance (Ordinance) classifies the cottage-style buildings as "tourist cabins" or "tourist camps," which are excluded from the general residential zone in which they sit. The cabins were constructed prior to Rye's adoption of the Ordinance, however; thus, they are prior non-conforming uses. Aside from not conforming to the use requirements, the cottages also do not conform to the lot-size requirements of the general residential zone.

In January 2004, 228 Maple applied to the ZBA for a special exception to convert the eleven buildings to condominium ownership. In its application, 228 Maple agreed to limit the use of the tourist cabins to seasonal use. The ZBA dismissed the application for lack of jurisdiction because the Ordinance only permitted condominium conversion of "dwelling units," and tourist cabins were not included in that definition.

228 Maple appealed to the superior court, and sought a declaratory ruling that the special exception criteria in the Ordinance conflicted with RSA chapter 356-B (1995 & Supp. 2006), the Condominium Act. The trial court ruled in July 2005 that the Ordinance's prohibition of condominium conversion for any building not classified as a "dwelling unit" conflicted with the Condominium Act. The court reversed the ZBA's dismissal of 228 Maple's application and remanded for a determination of whether the proposed condominium conversion would result in a change in use of the property.

On remand, the ZBA determined that no change in use would occur and granted 228 Maple's application for a special exception. The Selectmen appealed the ZBA's decision to the superior court, claiming that the court's

first decision placed the ZBA in the untenable position of deciding a matter over which it had no jurisdiction. Citing its prior decision, the trial court ruled in June 2006 that the Ordinance's prohibition of condominium conversions for any structures other than "dwelling units" conflicted with the Condominium Act. The court found that the only way the ZBA could deny the special exception would be for the condominium conversion to result in a change in land use, and the Selectmen had not met their burden to demonstrate that the ZBA's determination regarding change in use was unlawful or unreasonable.

The Selectmen appeal the trial court's rulings. We address each issue raised by the Selectmen in turn.

*I. Preemption*

The Selectmen argue that the superior court erred in ruling that the Ordinance conflicts with the Condominium Act by prohibiting condominium conversion of "tourist cabins." They argue that the legislature did not intend the Condominium Act to completely control land use regulation of condominiums because the Act expressly provides for local land use regulation.

An issue of state preemption is essentially one of statutory interpretation. *Blagbrough Family Realty Trust v. Town of Wilton*, 153 N.H. 234, 236 (2006). We review the trial court's statutory interpretation *de novo. In the Matter of Giacomini & Giacomini*, 151 N.H. 775, 776 (2005).

> We are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole. We first examine the language of the statute, and, where possible, ascribe the plain and ordinary meanings to the words used. When a statute's language is plain and unambiguous, we need not look beyond it for further indication of legislative intent, and we refuse to consider what the legislature might have said or add language that the legislature did not see fit to incorporate in the statute.

*Id.* (citations omitted).

It is well settled that towns cannot regulate a field that has been preempted by the State. *Thayer v. Town of Tilton*, 151 N.H. 483, 487 (2004). The preemption doctrine flows from the principle that municipal legislation is invalid if it is repugnant to, or inconsistent with, State law. *Id.* One way in which municipal legislation will be preempted is if it expressly contradicts State law. *Id.* State law expressly preempts local law when

there is an actual conflict between State and local regulation. *N. Country Envtl. Servs. v. Town of Bethlehem*, 150 N.H. 606, 611 (2004). An actual conflict exists when a municipal ordinance or regulation permits that which a State statute prohibits, or vice versa. *Id.*

The Selectmen challenge the trial court's finding of an actual conflict between the Condominium Act and the Ordinance. The Ordinance states, in pertinent part:

### Section 503 Condominium Conversions.

**503.1 Permitted by Special Exception:** In any district, conversion of existing dwelling units to condominium ownership shall be permitted as a special exception granted by the Board of Adjustment, only if all the provisions herein are met.

. . . .

### 503.3 Criteria for Special Exceptions.
A. The dwelling units which are subject to the request for condominium conversion must, at the time of the request for condominium conversion, exist as legal dwelling units pursuant to the ordinances of the Town of Rye. The burden shall be on the petitioner to demonstrate that the units sought to be converted have legal status.
B. Each dwelling unit of the condominium shall contain a minimum of six hundred (600) square feet of floor area.

The ordinance defines a "dwelling unit" as:

One or more rooms arranged for the use of one or more persons living together as a single housekeeping unit, and having cooking, living, sanitary and sleeping facilities, but not including hotel, motel, tourist cabin (camp), lodging house, institutional home, residential club units or other similar commercial accommodations offered for occupancy.

There is no dispute that the ten cottage-style buildings at issue in this case are "tourist cabins" under the Ordinance. There is also no dispute that the above-quoted language from the Ordinance prohibits conversion of tourist cabins to condominiums. The trial court ruled that this language in the Ordinance conflicts with RSA 356-B:5 (1995), which states, in pertinent part:

No zoning or other land use ordinance shall prohibit condominiums as such by reason of the form of ownership inherent therein. Neither shall any condominium be treated

differently by any zoning or other land use ordinance which would permit a physically identical project or development under a different form of ownership. . . . Nevertheless, cities and towns may provide by ordinance that proposed conversion condominiums and the use thereof which do not conform to the zoning, land use and site plan regulations of the respective city or town in which the property is located shall secure a special use permit, a special exception, or variance, as the case may be, prior to becoming a conversion condominium.

■ We agree with the trial court that section 503.3 of the Ordinance actually conflicts with RSA 356-B:5. On its face, the Ordinance prohibits buildings that are not dwelling units, such as tourist cabins, from being converted to condominiums. This restriction directly conflicts with the language of RSA 356-B:5 that provides, "Neither shall any condominium be treated differently by any zoning or other land use ordinance which would permit a physically identical project or development under a different form of ownership." Because the Ordinance prohibits the conversion of non-dwelling units to the condominium form of ownership, without any physical change to the units, the Ordinance prohibits that which a State statute permits. Accordingly the Ordinance directly conflicts with, and is preempted by, the Condominium Act.

■ The same analysis applies to the Selectmen's argument that 228 Maple does not comply with various requirements for a special exception for condominium conversion, particularly the requirement that each dwelling unit of the condominium must contain at least 600 square feet of floor area. The Ordinance allows buildings with less than 600 square feet of floor area to exist, but prohibits such structures from being converted to condominiums. Because section 503.3 B of the Ordinance excludes condominiums of 600 square feet or less based upon their form of ownership, this provision of the ordinance also conflicts with, and is preempted by, the Condominium Act.

This case is similar to *Cohen v. Town of Henniker*, 134 N.H. 425, 426 (1991), in which the owner of two apartment buildings wished to convert them to condominiums. The property did not satisfy the lot-size and frontage requirements for its zone; but, because the apartments were constructed before the Town of Henniker had adopted zoning ordinances, the apartments were legal nonconforming uses. *Id.* The apartment owner applied for subdivision approval to convert the units into condominiums and the Town denied it because the proposal did not conform with the lot-size requirements for its zone. *Id.* The trial court denied the owner's appeal. *Id.* In reversing the trial court, we quoted the same language from

the Condominium Act quoted above and observed that the existing rental units were physically identical to the proposed condominiums. *Id.* at 428. "Thus," we stated, "RSA 356-B:5 would indicate that condominium conversion would have to be allowed to avoid disparate treatment." *Id.* We reach the same conclusion on the facts before us today. Because the Ordinance, on its face, prohibits the conversion of the tourist cabins at issue, while the physically identical structures are permitted under a different form of ownership, the ordinance conflicts with RSA 356-B:5.

## II. The ZBA's Findings of Fact

The Selectmen next argue that the ZBA erred in finding, and the trial court erred in affirming, that 228 Maple's proposed condominium conversion would not result in a change in use of the property. The conversion will result in a change in use, the Selectmen argue, because: (1) the change in use from tourist occupancy to owner occupancy will increase traffic, waste, and consumption of water; (2) the applicants will physically change the property by adding more parking spaces; and (3) the current septic system serving the tourist cabins is insufficient to serve condominiums and will not receive condominium subdivision approval from the New Hampshire Department of Environmental Services (DES) without the installation of an entirely new system.

Our review in zoning cases is limited. *Harrington v. Town of Warner*, 152 N.H. 74, 77 (2005). "The factual findings of the ZBA are deemed *prima facie* lawful and reasonable, and will not be set aside by the trial court absent errors of law, unless the court is persuaded, based upon a balance of the probabilities, on the evidence before it, that the ZBA's decision is unreasonable." *Id.* The party seeking to set aside the ZBA's decision bears the burden of proof on appeal to the trial court. *Id.* We will uphold the trial court's decision on appeal unless it is not supported by the evidence or is legally erroneous. *Id.*

The trial court affirmed the ZBA's determination that the conversion would not affect the use of the land based in part upon 228 Maple's agreement to restrict the condominiums to seasonal use only, thus maintaining the same time period of use as tourist cabins. The trial court recognized the possibility that four parking spaces may be added, but also recognized that the additional parking was not required and was simply a suggestion made by the Rye Planning Board. The trial court considered evidence presented that the cabins themselves would not change in size or be altered at all; thus, they would not accommodate more people. Further, the trial court considered the substantial evidence presented to the ZBA that no impact on the land would occur, including a traffic study done by a traffic engineer, which showed that there would be no change in traffic

impact. The trial court also considered the extensive discussion before the ZBA of updating the septic system, but found that this was insufficient to constitute a change in use.

■ Pursuant to our limited review in zoning cases, we cannot conclude that the Selectmen have shown that the trial court's decision was unsupported by the evidence or legally erroneous. Accordingly, we uphold the trial court's decision.

*III. The ZBA's Authority*

■ The Selectmen raise two arguments regarding the trial court's 2005 decision to remand to the ZBA. They first argue that the trial court erred in remanding to the ZBA because the ZBA does not have the authority to determine whether the Ordinance conflicts with the Condominium Act. We disagree with the premise of this argument. In its 2005 order, the trial court ruled that the Ordinance and the Condominium Act conflict, stating: "Here, the Ordinance, as written, results in an effective barrier against certain kinds of accommodations, which it does not define as 'dwelling units,' being converted to condominiums; thus, the intent of the RSA 356-B:6 [*sic*] to limit discrimination against condominiums solely as a form of ownership is thwarted." The trial court determined, before remanding to the ZBA, that section 503.3 A of the Ordinance conflicted with the Condominium Act. Thus, the ZBA was not required to determine whether the Ordinance conflicted with the Condominium Act because the trial court had already done so.

■ The Selectmen's second argument asserts that the trial court erred in remanding to the ZBA because the ZBA does not have the authority to waive any conditions for a special exception, and the criteria that an applicant's property be an existing dwelling unit was a requirement for a special exception. We disagree. As explained above, the trial court ruled that Section 503.3 A conflicted with the Condominium Act and was preempted. Accordingly, the ZBA did not "waive" the dwelling unit condition for a special exception; the ZBA properly did not *consider* the dwelling unit condition in light of the trial court's ruling.

*Affirmed.*

BRODERICK, C.J., and DALIANIS and HICKS, JJ., concurred; DUGGAN, J., concurred specially.

DUGGAN, J., concurring specially. I concur with the majority's decision to affirm the superior court's order upholding the ZBA's decision to allow 228 Maple to convert the buildings it owns into condominiums. I write

separately, however, because I would employ a different analysis concerning the interplay between the Town's Zoning Ordinance and RSA 356-B:5 (1995).

To start, the majority opinion does not fully acknowledge the language in RSA 356-B:5 which plainly states:

> Nevertheless, cities and towns *may* provide by ordinance that proposed conversion condominiums and the use thereof which do not conform to the zoning, land use and site plan regulations of the respective city or town in which the property is located shall secure a special use permit, a special exception, or variance, as the case may be, prior to becoming a conversion condominium.

(Emphasis added.) This language suggests that in the event that proposed conversion condominiums do not conform to the Town's local land use regulations, the Town can require the developer to apply for a special exception.

This language has been examined in *Cohen v. Town of Henniker*, 134 N.H. 425, 428 (1991). Citing the language from RSA 356-B:5 quoted above, the court explains:

> [A] municipality may require such a permit, exception, or variance prior to conversion even where there exists a protected nonconforming use. However, to be consistent with the rest of the statute, such a requirement may only be denied if the conversion would have an actual effect on the use of the land.

*Id.* (citation omitted). As explained in the majority opinion, *Cohen* involved a situation where the owner of two apartment buildings, which were legal nonconforming uses, wished to convert them into condominiums. *Id.* at 426. The owner applied for subdivision approval to convert the apartment units into condominiums, and the Town denied the application because the proposal did not conform with the lot-size requirements for its zone. *Id.* In holding that the Town erred in denying the application, the *Cohen* court further explained that:

> Interpreting RSA 356-B:5 to preclude denial of a special use permit, special exception, or variance where there is no change in land use is supported by our cases on nonconforming uses. . . . The conversion of apartment units into condominium units is not necessarily a change in use. If the conversion would in fact have an effect on the land use, this may constitute a change or expansion of use; in such a case, preventing conversion would not

conflict with the doctrine of nonconforming uses, and would not violate RSA 356-B:5.

*Id.* at 429.

The analysis set forth in *Cohen* controls in this case. Here, the cottage-style buildings owned by 228 Maple are legal nonconforming uses. As the majority points out, they do not meet the definition of "dwelling unit," and most of the cottages do not meet the minimum square footage requirement specified in section 503.3 of the Town's Ordinance. However, the ZBA determined, and the superior court agreed, that the proposed condominium conversion would not result in a change in the use of the property. Consequently, it was proper for the ZBA to grant 228 Maple's application for a special exception. I would therefore affirm the superior court's order upholding the ZBA's decision.