Belknap
No. 2006-797

SUZANNE K. DOYLE & a.

v.

TOWN OF GILMANTON & a.

Argued: June 7, 2007
Opinion Issued: July 19, 2007

*Preti, Flaherty, Beliveau & Pachios, PLLP,* of Concord (*Simon C. Leeming* and *Mark H. Puffer* on the brief, and *Mr. Leeming* orally), for the plaintiffs.

*Upton & Hatfield, LLP,* of Concord (*Barton L. Mayer* on the brief and orally), for the defendants.

GALWAY, J. The defendants, the Town of Gilmanton and the Gilmanton Planning Board (board), appeal orders of the superior court relating to matters involving the property of the plaintiffs, Suzanne K. Doyle and James F. Doyle. We reverse.

The following facts appear in the record. The plaintiffs own a sixty-two and one-half acre parcel in Gilmanton. In October 2005, the plaintiffs filed an application with the board seeking to subdivide their parcel into three building lots: Lot 1, which would consist of approximately three and one-half acres and would include the existing house; Lot 2, which would consist of approximately six and one-half acres; and Lot 3, which would consist of the approximately fifty-two remaining acres. Despite the large size of Lot 3, the plaintiffs had difficulty identifying land suitable for building because the lot is covered extensively by wetlands. Indeed, the extent of the wetlands on the entire parcel led the board to question whether the proposed lots would meet the minimum building site size required by the Town of Gilmanton's Subdivision Regulations (regulations). To meet the regulations, each proposed building site must contain a minimum of 30,000 contiguous square feet of suitable soil. GILMANTON SUBDIVISION REGULATIONS § VI(C)(2).

The board held a series of public hearings regarding the plaintiffs' proposed subdivision. During these hearings, there was some debate about whether the land covered by setbacks ought to be included when calculating whether a proposed lot meets the minimum building site size requirement. At its March 9, 2006 meeting, the board went into a non-public session to discuss the written opinion of its attorney regarding the interpretation of the minimum building site size requirement. Following this non-public session, the board determined, contrary to the plaintiffs' request, that the regulations excluded setbacks from the calculation of the size of a building site. Applying this interpretation, the board determined that Lots 2 and 3 did not meet the minimum building site size requirement.

The plaintiffs contested the board's interpretation of the regulations, and, in the alternative, requested that the minimum building site size requirement be waived. The board granted the plaintiffs' waiver request for Lot 2 because it "just fell short of compliance." The board, however, denied the waiver for Lot 3 because it had only about half of the required

area. The board determined that the plaintiffs could use Lot 3 as a wood lot, but, if they opted not to do so, it would not be subdivided from Lot 1.

The plaintiffs appealed to the superior court, and requested, among other things, disclosure of the written opinion of the town's attorney regarding the interpretation of the regulations. The Superior Court (*Mohl*, J.) determined that the attorney's written opinion should not be disclosed, but that the board violated RSA chapter 91-A, the Right-to-Know Law, when it held a non-public session, and, therefore, the minutes of the non-public session should be disclosed. Subsequently, following a hearing on the merits, the Superior Court (*Smukler*, J.) reversed the board's decision that the plaintiffs' proposed lots did not meet the minimum building site size requirement. The defendants appeal, arguing that the board did not violate the Right-to-Know Law, and that the plaintiffs' proposed lots were insufficient.

We address the defendants' latter argument first. The interpretation of subdivision regulations is a question of law, which we review *de novo*. *Bussiere v. Roberge*, 142 N.H. 905, 908 (1998); *Lemm Development Corp. v. Town of Bartlett*, 133 N.H. 618, 620 (1990). In so doing, we are not bound by the interpretation of the planning board. *Bartlett*, 133 N.H. at 620. In general the traditional rules of statutory construction govern our review. *Id.*; *Harrington v. Town of Warner*, 152 N.H. 74, 79 (2005). Thus, the words and phrases of the regulations should be construed according to the common and approved usage of the language. *Bartlett*, 133 N.H. at 620. Where the regulations define a term in issue, however, that definition will govern. *Id.*; *Cormier v. Town of Danville*, 142 N.H. 775, 778 (1998).

The regulations state, in relevant part:

> In addition to the provisions above, each lot shall also contain within the required lot size a minimum building site of 30,000 *contiguous* square feet which meets the following criteria:
> a. There shall be at least 3 feet of natural soil above bedrock. The Board may require a test pit on each lot to verify the depth to bedrock. A soil profile shall be submitted for each test pit.

GILMANTON SUBDIVISION REGULATIONS § VI(C)(2). A "building site," in turn, is defined as: "That portion of a lot, tract or parcel of land upon which a single building is placed." *Id.* § IX. In interpreting the regulations, the board concluded that when calculating whether a lot contains the required 30,000 contiguous square feet, an applicant could not include the land contained within setbacks, including wetlands setbacks. Because of the setbacks required by the extensive wetlands on the plaintiffs' property, the board determined that Lot 3 had insufficient contiguous area to satisfy the regulations.

On appeal from the board, the superior court concluded that the board's reading of the regulations was "textually correct." Despite this conclusion, however, the superior court found that the requirement of "30,000 contiguous square feet for buildings alone is absurd and serves no legitimate land use purpose." The superior court, therefore, reversed the decision of the board and concluded that setbacks could be included when calculating the minimum building site size.

As noted, the regulations define a "building site" as that part of a parcel of land on which a building is placed. The regulations do not, however, state whether setbacks are included in calculating that area and, in fact, do not specifically mention setbacks at all. Nevertheless, the regulations require all plats to conform not only with the regulations, but also with "any other pertinent State or local laws, regulations or ordinances." *Id.* § VI(A)(1). Therefore, even though the regulations do not mention setbacks, they require all plats to comply with the Gilmanton Zoning Ordinance (ordinance), which both requires and defines setbacks. *Cf. Cohen v. Town of Henniker,* 134 N.H. 425, 429 (1991) (concluding that provision of subdivision regulations made compliance with zoning ordinance a requirement for subdivision approval).

The ordinance defines a setback as that area between the property line and a line running parallel to it, which "shall contain no structures." GILMANTON ZONING ORDINANCE art. XVI. The ordinance defines structures as: "*Anything* constructed or erected with a fixed location on the ground or attached to something having a fixed location on the ground." *Id.* (emphasis added). Logically, therefore, because a setback cannot be an area where a building or other structure is placed, it cannot be part of a "building site" as defined in the regulations. Because setbacks are excluded from the definition of "building site," we conclude, as did the board and the superior court, that the area covered by setbacks should not be included when calculating whether a proposed building site meets the minimum building site size requirement.

The plaintiffs contend that this reasoning is flawed because the Town is attempting to define the term "building site" in multiple, inconsistent ways. The parties agree that the purpose of the 30,000 contiguous square foot requirement is not simply to provide sufficient suitable space for the construction of a house, but also to provide for the development that generally accompanies a house, *e.g.,* a garage, deck, swimming pool, or septic system. According to the plaintiffs, the defendants first read the definition of "building site" literally as permitting a "single building" when determining whether setbacks should be included, GILMANTON SUBDIVISION REGULATIONS § IX, but later acknowledge that the

definition includes accessory buildings and improvements. We do not agree.

■ As noted, the parties agree that despite the definition's use of the phrase "single building," it actually encompasses the area covered by a building and its attendant structures such as a garage. The defendants' acknowledgment that the definition should not be read literally, however, does not undermine their interpretation of "building site" as excluding setbacks. Interpreting "building site" as permitting accessory buildings does not mean that any of the permitted structures can be built in a setback. Setbacks, as noted, are areas where structures are not permitted. Thus, allowing a house and its attendant structures, such as a garage, on a "building site" does not allow them to be built within a setback as a setback cannot be part of a "building site."

■ Despite concluding that the board's reading of the regulations was "textually correct," the superior court determined that the regulation was both absurd and served no legitimate land use purpose. As to whether the regulation serves a legitimate land use purpose, RSA 674:36, II (Supp. 2006) permits the adoption of subdivision regulations that serve various goals, including: protecting against scattered or premature subdivisions that would involve dangers to health, safety or prosperity due to lack of water supply or drainage, RSA 674:36, II(a); requiring that the land be of such character that it can be used for building without danger to health, RSA 674:36, II(h); and prescribing minimum areas of lots so as to assure conformity with local zoning ordinances and to assure such additional areas as may be needed for each lot for on-site sanitary facilities, RSA 674:36, II(i). The Town's requirement that lots have a certain minimum contiguous area for building purposes ensures that the lots will have proper areas for drainage, will conform with the ordinances and will have sufficient areas for sanitary facilities. Therefore, we conclude that requiring a minimum lot size serves a legitimate land use purpose.

As for its second conclusion, the trial court found that requiring 30,000 contiguous square feet of building area, when a typical house has a footprint of about 2,000 square feet, is absurd. Additionally, the trial court found that although setbacks may not contain buildings, landowners may place "septic systems and other underground objects" in the setback area. Thus, according to the trial court, because the setback area could be used for construction, excluding it from the minimum building site was absurd.

The defendants contend that the trial court erred in focusing upon the typical footprint of a house because such focus ignores the purpose of the regulation. As noted above, the parties agree that one purpose of the contiguous square foot requirement is to provide space for the

development that generally accompanies a house. According to the defendants, the trial court's focus upon the footprint of a typical house led it to incorrectly find that the regulation was absurd. We agree.

■ Because a purpose of the regulation is to permit the erection of various structures, not merely a single house, the trial court's focus upon the footprint of a typical home was misplaced. The building site must be capable of supporting a house and its attendant structures such as a septic system or well. Thus, the fact that a typical house's footprint is substantially less than 30,000 square feet does not mean that the regulation is absurd. Moreover, we disagree with the trial court's conclusion that setbacks may be used for construction and should thus be included in the calculation. As noted, the ordinance prevents the erection of a "structure" within a setback and defines structures broadly as:

"Anything constructed or erected with a fixed location on the ground or attached to something having a fixed location on the ground." Septic systems and other "underground objects" fit within this definition. Therefore, the setbacks may not be used for the erection of a building or its appurtenant structures and should not be included within the minimum building site area.

For the above reasons, we conclude that the board's interpretation of the regulations was correct and that the superior court erred in reversing the decision of the board. Because we reverse the order of the superior court on the ground stated, we need not reach the other issue raised by the defendants.

*Reversed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and HICKS, JJ., concurred.