Portsmouth Family Division
No. 2001-409

IN THE MATTER OF STATE OF NEW HAMPSHIRE EX REL. VICKIE REITENOUR AND WENDELL MONTGOMERY

Submitted: July 25, 2002
Opinion Issued: September 18, 2002

*Krans and Krans*, of Dover (*Hamilton R. Krans, Jr.* on the brief), for the petitioner.

*Coughlin, Rainboth, Murphy & Lown, P.A.*, of Portsmouth (*Kenneth D. Murphy* on the brief), for the respondent.

*Philip T. McLaughlin*, attorney general (*Suzan M. Lehmann*, assistant attorney general, on the brief), for the State, as *amicus curiae*.

DUGGAN, J. The respondent, Wendell Montgomery, appeals a decision of the Portsmouth Family Division (*DeVries*, J.) ordering him to pay retroactive child support dating to the birth of his minor child who was born out of wedlock. We affirm.

In March 2000, the department of health and human services (DHHS) filed an action under RSA chapter 168-A (2002), the Uniform Act on Paternity, on behalf of the petitioner, Vickie Reitenour, alleging that the respondent was the father of an infant born out of wedlock on July 31, 1986. DHHS requested the court to declare the respondent to be the father of the child and to order him to pay both prospective and retroactive child support. DHHS subsequently moved to amend its petition to include claims under RSA chapter 546-B (Supp. 2001), the Uniform Interstate Family Support Act, which the court granted. After a hearing, the court ordered the respondent to pay both prospective and retroactive child support, and granted the petitioner reimbursement for the expenses associated with bringing the action.

Although the respondent does not dispute that he is the father of the child, he argues that the trial court erred in: (1) ordering retroactive child support; (2) not finding the petitioner guilty of laches; (3) admitting into evidence two letters from state agencies; (4) not requiring that any retroactive payments be held in trust for the child; and (5) not requiring specific receipts and bills to support an award of costs and attorney's fees. We address each argument in turn.

The respondent first argues that neither RSA chapter 168-A nor RSA chapter 546-B authorizes a court to order retroactive child support. RSA chapter 168-A sets forth the procedure by which a mother, child, or public

authority chargeable by law with the support of the child may determine the paternity of a child born out of wedlock. *See* RSA 168-A:2; *see also Opinion of the Justices*, 131 N.H. 573, 576 (1989). Once paternity has been established, the father of a child born out of wedlock is liable for the "reasonable expense of the mother's pregnancy and confinement and for the education and necessary support of the child." RSA 168-A:1. The plain language of this statute indicates a legislative intent to make fathers retroactively liable for some expenses because once paternity has been established, the father of a child born out of wedlock may be liable for *past* expenses associated with the mother's pregnancy and confinement. *See id.* Additionally, the applicable statute of limitations permits proceedings to be brought within eighteen years of the date of birth of the child in question. *See* RSA 168-A:12. As this action is not barred by the statute of limitations, it would appear that the trial court was authorized to order the respondent to pay retroactive child support.

The respondent does not dispute that the petitioner was permitted to bring this paternity action nor does he dispute the trial court's authority to order him to pay for the necessary support and education of his child. Instead, he argues that "[t]he ability of a mother to commence a paternity action is not synonymous with the ability to obtain eighteen (18) years of retroactive child support." Thus, while the petitioner was permitted to bring an action under this statute to determine paternity and to establish his prospective child support obligations, the respondent argues that RSA chapter 168-A "does not contain language which would allow child support to be paid retroactively to the birth of the child."

In support of this argument, the respondent points to Maine's Uniform Act on Paternity, which provides an eighteen-year statute of limitations to establish paternity, yet specifically limits a father's liability for past education and support to the six-year period preceding the commencement of an action. *See* Me. Rev. Stat. Ann. tit. 19-A, § 1554 (West 1998). A review of the legislative history of RSA chapter 168-A reveals that our legislature considered adopting a similar statute, but did not do so. *See* HB 663 (1971).

When HB 663, an act adopting the Uniform Act on Paternity, was introduced in the house, proposed RSA 168-A:3 limited a father's liability for past education and necessary support to "a period of *four years* next preceding the commencement of a proceeding to recover said expenses." (Emphasis added.) The senate, however, proposed amending RSA 168-A:3 by substituting the words "one year" for the words "four years," so that the proposed statute as amended read: "The father's liabilities for past education and necessary support are limited to a period of *one year* next preceding the commencement of a proceeding to recover said expenses." N.H.S. JOUR. 1647-50 (1971) (emphasis added). The senate also added

RSA 168-A:13, which contained a statute of limitations that stated: "No proceeding under this chapter shall be maintained unless commenced within one year of the date of birth of the child in question." In explaining these proposed amendments, Senator Nixon stated that they

> would restrict the liability of the alleged father in the instances of a child born out of wedlock for a period of one year from the date of birth. The original bill would have extended his liability exposure to four years. The thinking behind this amendment is that an alleged father should not have to be kept in suspense for a 4 year period awaiting the mother's action to bring suit to have a declaration of his responsibility determined upon.

N.H.S. JOUR. at 1649. Obviously, this legislative history illustrates that the legislature was aware of the issue now before us. *Cf. Wigginton v. Com. ex rel. Caldwell*, 760 S.W.2d 885, 886 (Ky. Ct. App. 1988).

██ Nonetheless, the senate eventually removed RSA 168-A:3 and instead opted to include only the statute of limitations. In explaining this change, Senator Koromilas stated: "There was an amendment put in by the Senate and there was some misunderstanding with respect to the limitations. We put an additional limitation to within one year of the birth of the child conceived out of wedlock. We took out a section which was inconsistent with that limitation." N.H.S. JOUR. 1991 (1971). As finally passed, RSA 168-A:3 did not specifically limit the time during which a father could be liable for past education and support. *See* Laws 1971, ch. 530:1. Instead, the only limitation on a father's liability was contained in the statute of limitations. *See id.* By failing to include a specific provision limiting a father's liability for past education and support, the legislature intended the *only* restriction on a petitioner's ability to collect retroactive child support to be the statute of limitations. When the legislature later amended the statute of limitations to eighteen years, it did not add a provision limiting the father's liability for past education and support. Thus, so long as a proceeding is brought within the applicable statute of limitations, we conclude that the trial court has discretion to order retroactive child support back to the child's birth.

This interpretation of the statute has been applied in prior cases. *See State v. Weeks*, 134 N.H. 237, 242-43 (1991); *Joann P. v. Gary W.*, 122 N.H. 104, 106 (1982). We have explained that a trial court may hold a father responsible for repaying all public assistance benefits made during the child's life. *See Weeks*, 134 N.H. at 242. The only statutory limitation on such recovery has been deemed to be the statute of limitations. *See id.; see also Joann P.*, 122 N.H. at 106.

The respondent argues that this interpretation "would invite mothers to wait and file paternity actions years after the birth when evidence and witnesses may be stale." This danger, however, is limited by the fact that if a respondent can show that the delay in commencing suit is unreasonable and prejudicial, the action may be barred by laches. *See Weeks*, 134 N.H. at 243. As we conclude that RSA chapter 168-A authorizes a court to order retroactive child support, we need not undertake a separate analysis under RSA chapter 546-B.

█ We next address whether the petitioner's suit is barred by laches. Laches may apply to paternity actions filed prior to the expiration of the statute of limitations, but only if the respondent shows that the delay was prejudicial and unreasonable. *See id.* at 240.

> Laches is not triggered by the mere passage of time, but may be appropriate where a suit has been unreasonably delayed and the delay has resulted in unfair prejudice. In determining whether the doctrine should apply to bar a suit, the court should consider the knowledge of the plaintiffs, the conduct of the defendants, the interests to be vindicated, and the resulting prejudice. This inquiry hinges upon the particular facts of each case.

*Miner v. A & C Tire Co.*, 146 N.H. 631, 633 (2001) (quotations and citations omitted). A trial court has wide latitude in deciding whether the circumstances justify its application. *See id.* "Unless we find that the trial court's decision is unsupported by the evidence or erroneous as a matter of law, we will not overturn it." *Id.*

█ In support of his argument that an award of retroactive child support should be barred by laches, the respondent notes that no action was brought until fourteen years after the birth of the child, and that the petitioner "admitted that in 1986 and 1987 she was aware that the [r]espondent was residing in New Hampshire . . . [yet she] failed to file any court action . . . and failed to contact a lawyer or investigator in New Hampshire." Even assuming the petitioner unreasonably delayed bringing this paternity proceeding, the respondent has failed to prove that he was materially prejudiced by this delay. *See id.* at 633-34. The respondent contends that the delay prevented him from refuting the petitioner's allegations that he was aware of her pregnancy. During the hearing, the petitioner testified that she informed the respondent of her pregnancy by giving paperwork to his supervisor. The trial court found that "[t]hrough the receipt of petitioner's letters forwarded to him in the package, respondent discovered petitioner was pregnant." The respondent argues

that he was unable to refute the petitioner's allegation that he received the package because he "attempted to obtain business records from his old employer but the company no longer exists" and because he was "unable to locate the witness." Such allegation, however, was inconsequential to the trial court's ultimate determination that the respondent knew of the petitioner's pregnancy. The trial court found that "petitioner telephoned respondent on several occasions: to inform him that she was in labor, that his daughter was born and that she and the child were released from the hospital" and that "[f]ollowing the birth of the parties' child and while they remained in communication, petitioner requested financial assistance . . . from respondent." As the paperwork was not the only source of the trial court's finding that the respondent had been informed of the petitioner's pregnancy, we cannot conclude that the delay resulted in any prejudice.

We also reject the respondent's claim that he has been materially prejudiced by the delay because had he been aware of his obligation to support the child, he would have been "a little more reserved about getting married and having another family" and "[f]inancially [he] may have made a few other choices in [his] life." The respondent has not asserted that he will suffer any particular hardship from having to meet the obligations imposed by the trial court's decree. *Cf. State v. Garcia,* 931 P.2d 427, 429 (Ariz. Ct. App. 1996) (finding hardship where paternity action not filed for more than sixteen years and father was self-employed as a scrap metal recycler, did not own a home, had a wife and six minor children and no savings or retirement plan); *see also* Annotation, *Retroactive Child Support,* 87 A.L.R. 5TH 361, 431 (2001) (collecting cases in which retroactive child support award was limited or precluded by laches). We conclude, therefore, that the trial court did not err in determining that the petitioner's claim for retroactive child support was not barred by the defense of laches.

We next turn to the respondent's assertion that the trial court erred in admitting into evidence two letters from state agencies relating to the issue of laches. The letters were written by state agencies and indicate that the petitioner contacted them and tried to obtain child support from the respondent through these agencies. The respondent argues that the letters are inadmissible hearsay. The petitioner contends that because the rules of evidence do not apply to these proceedings, the letters are not barred by hearsay.

■ We need not decide today, however, whether the rules of evidence apply because the trial court's exercise of discretion in admitting the letters is sustainable. Regardless whether the rules of evidence apply to these proceedings, the trial court strictly applied the rules of evidence and

determined that the two letters were admissible under the public records exception to the hearsay rule. *See* N.H. R. Ev. 803(8). We agree that the letters were admissible under Rule 803(8)(c) because they are statements that set forth "factual findings resulting from an investigation made pursuant to authority granted by law . . . ." *Id.*; *see also* 4 C. MUELLER & L. KIRKPATRICK, FEDERAL EVIDENCE § 456 (2d ed. 1994). While one letter simply states that "a child support case was opened [] on March 6, 1986 and closed on September 5, 1986," the other letter states that "your child support case was opened on June 21, 1994 . . . [and the case] has been closed . . . [because the] Father's location and/or all identifiable information is unknown. Attempts to locate this person have been made quarterly using at least three locate sources over the past three years, all of which have been un[suc]cessful." The trial court determined that these documents were trustworthy. *See* 5 J. WEINSTEIN & M. BERGER, WEINSTEIN'S FEDERAL EVIDENCE § 803.13[1] (J. McLaughlin ed. 2d ed. 2002) (explaining trustworthiness requirement). As the respondent does not point to facts in the record indicating otherwise, we conclude that the trial court properly admitted the letters into evidence.

■ We next address whether the court's exercise of discretion in refusing to place the retroactive payments into trust was sustainable. The respondent argues that a trust is necessary "to ensure that the funds [are] available for the sole benefit of the minor child." Generally, any retroactive support payments are paid directly to the custodial adult except "under special circumstances where equitable considerations warrant direct payments to the child." *West v. Turchioe*, 144 N.H. 509, 512 (1999). The respondent has not articulated any special circumstances that would necessitate placing the funds into a trust fund. The petitioner was required to raise the child on a modest income and has incurred significant debt while doing so. As one of the purposes of providing retroactive child support is to remedy past debts incurred by the mother on the child's behalf, we conclude that the trial court's exercise of discretion is sustainable. *Cf. State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard).

We lastly address whether the trial court erred in awarding costs and attorney's fees to the petitioner without receiving copies of the bills for such expenses. As the respondent never specifically objected to the petitioner's failure to introduce the individual receipts, this issue has not

been preserved for appeal. *See State v. Wisowaty*, 133 N.H. 604, 607 (1990).

*Affirmed.*

BROCK, C.J., and NADEAU and DALIANIS, JJ., concurred.