Hillsborough-northern judicial district
No. 2003-576

TOWN OF LYNDEBOROUGH

v.

BOISVERT PROPERTIES, LLC & a.

Argued: February 11, 2004
Opinion Issued: April 21, 2004

*Drescher & Dokmo, P.A.*, of Milford (*William R. Drescher* on the brief and orally), for the plaintiff.

*Smith-Weiss, Shepard and Durmer, PC,* of Nashua (*Robert M. Shepard* on the brief and orally), for the defendants.

*Peter W. Heed,* attorney general (*Anne M. Edwards,* associate attorney general, on the brief and orally), for the intervenor, New Hampshire Department of Resources and Economic Development.

*Kenneth E. Churbuck* and *Noah A. Mandell,* of Nashua, by brief, for the intervenor, Granite State ATV Association.

*Baldwin, Callen & Hogan, P.L.L.C.,* of Concord, for the intervenor, the abutters and near neighbors, joins in the brief of the plaintiff.

*Gary H. Bernier,* of Concord, by brief, for the New Hampshire Municipal Association, as *amicus curiae.*

NADEAU, J. The plaintiff, Town of Lyndeborough (town), appeals an order of the Superior Court (*Lynn,* J.) declaring that RSA chapter 215-A (2000 & Supp. 2003) preempts the town's site plan review process as a prerequisite to establishing an Off Highway Recreational Vehicle (OHRV) trail on land owned by the defendants, Boisvert Properties, LLC, Barbara Blaisdell Boisvert, and Laurent Boisvert, II. We reverse and remand.

The relevant facts follow. The defendants collectively own more than 500 acres of land located in Lyndeborough and the neighboring town of Mont Vernon. The land in Lyndeborough lies within the Town's Rural Land 1 zoning district. Outdoor recreational uses are permitted within that district, but those uses are subject to site plan review and approval by the town's planning board. Pursuant to local zoning regulations, however, camping is prohibited within the district.

In August 2001, the defendants sought site plan review and approval from the town's planning board to use their property for a commercial, recreational area. The recreational area was to include OHRV trails, a paint ball park, and overnight camping facilities. Given the prohibition against camping contained in the local zoning regulations, the planning board denied the defendants' application. The defendants then sought a variance from the town's zoning board of adjustment (ZBA). When their application for a variance was subsequently denied, the defendants sought judicial relief. The Superior Court (*Barry,* J.) upheld the ZBA's ruling. In July 2002, the defendants ultimately withdrew the remaining portions of their proposal from the planning board's consideration.

Following the withdrawal of their proposal, the defendants listed their property as an open OHRV trail with the New Hampshire Department of Resources and Economic Development (DRED) pursuant to RSA chapter

215-A, and granted an easement to the Granite State ATV Association (association) to use their land. The town's selectmen informed the defendants that irrespective of their decision to list their property with DRED, their proposal remained subject to site plan review and approval by the planning board before OHRVs could be used on their property. The defendants continued to permit public use of the OHRV trails on their land, believing that because they had listed their property with DRED, they were exempt from local land use regulations imposed by the town.

The town filed a petition for injunctive relief with the superior court. It also moved to bifurcate the issues, arguing that the question of whether RSA chapter 215-A preempted the town's local land use regulations concerning OHRV use was dispositive. DRED, the association, and a group of nearby neighbors and abutters intervened. After reviewing memoranda of law on the matter, the court concluded that, "RSA 215-A preempts the town from requiring the defendants to obtain site plan approval as a prerequisite to permitting public use of trails which have been accepted by DRED as part of the state OHRV trail system." The court reasoned that permitting site plan review would frustrate the purpose of the statute, because the time and expense associated with the review process would discourage landowners from making their property available for OHRV use. The court did conclude, however, that "the statute does not preclude the town from regulating certain other aspects of OHRV use on the subject property," such as the hours during which OHRV use would be permitted, whether commercial activities may occur on the land, and "whether and where picnic areas, rest areas or sanitary facilities may be located." Following the court's ruling, the town filed a motion for reconsideration, which the court denied.

On appeal, the town, supported by the nearby neighbors and abutters, argues that RSA chapter 215-A does not preempt local land use regulation of OHRVs on private land. The defendants, DRED, and the association disagree, albeit for differing reasons. We agree with the town as explained below, and, thus, we need not address the town's other issues on appeal.

*I. Preemption*

"It is well settled that towns cannot regulate a field that has been preempted by the State." *JTR Colebrook v. Town of Colebrook*, 149 N.H. 767, 770 (2003) (quotation omitted). This doctrine emanates from the principle that municipal legislation is invalid if it is repugnant to, or inconsistent with, State law. *Town of Hooksett v. Baines*, 148 N.H. 625, 627 (2002). Municipal legislation is deemed preempted "if it expressly contradicts State law or if it runs counter to the legislative intent

underlying a statutory scheme." *JTR Colebrook,* 149 N.H. at 770. "Local ordinances and regulations governing a particular field run counter to a statute's legislative intent if the intent is to preempt that field. . . . We infer an intent to preempt a field when the legislature enacts a comprehensive, detailed regulatory scheme." *Arthur Whitcomb, Inc. v. Town of Carroll,* 141 N.H. 402, 406 (1996).

Preemption, then, is essentially a matter of statutory interpretation and construction. *N. Country Envtl. Servs. v. Town of Bethlehem,* 150 N.H. 606, 611 (2004). Resolution of the particular issue here hinges upon the meaning of the provisions comprising RSA chapter 215-A. *See Arthur Whitcomb,* 141 N.H. at 405. We are the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. *Id.*

We conclude that RSA chapter 215-A does not constitute a detailed and comprehensive regulatory scheme with respect to OHRV trails on private land. Admittedly, the chapter, entitled "Off Highway Recreational Vehicles and Trails," regulates a variety of activities relating to OHRVs, including their registration and operation. *See* RSA 215-A:21, :29 (Supp. 2003). The provision of the chapter titled "Intent" explicitly states:

> The general court declares it to be in the public interest to balance the demand for ATV and trail bike trails on *state lands*:
>
> (a) With other, non-motorized recreational trail uses;
>
> (b) Potentially conflicting management goals for state lands; and
>
> (c) Protection of wildlife and ecologically important areas.

RSA 215-A:41, I (Supp. 2003) (emphasis added). In furtherance of the public interest, the chapter aims to develop "a system of trails for ATVs and trail bikes on both public and private lands." RSA 215-A:41, II (Supp. 2003).

We have previously recognized that in enacting certain provisions of this chapter, "[t]he legislature intended to make more land available to OHRV users . . . . Accordingly, the statute confers a significant benefit upon the general public." *Lorette v. Peter-Sam Inv. Properties,* 140 N.H. 208, 212 (1995) (discussing provisions conferring immunity upon those whose land is used for OHRV use from suits arising from the inherent dangers of the activity); *see also Moody v. Continental Paving,* 148 N.H. 592, 595 (2002). To this end, the chapter seeks to use, "to the greatest extent possible, private lands, under voluntary agreement with landowners," RSA 215-A:41, II (a), as well as "public lands that can host ATV and trail bike trails

that are compatible with existing uses and management goals and plans," RSA 215-A:41, II (b).

Despite the chapter's brief mention of the creation of OHRV trails on both private and public lands, *see* RSA 215-A:41, II (a)-(b), subsequent provisions are concerned solely with the creation of trails on State lands, and are silent concerning the establishment of trails on private lands. *See* RSA 215-A:42-:43 (Supp. 2003). This omission undermines the chapter's alleged comprehensiveness.

Specifically, the chapter lists requirements and safeguards that must be adhered to before an OHRV trail can be created on State land. Foremost among these protections is a two-step review process. The first step, the initial screening process, generally concerns the land itself. It requires, for example, that "no deed restrictions, laws, or purchase funding source restrictions . . . prohibit the use of ATVs or trail bikes on the property." RSA 215-A:43, I (a). The second step, the planning and layout phase, sets forth twenty-nine site requirements similar to those normally considered and enforced by local planning and zoning boards. *See* RSA 215-A:43, II (a)-(cc). The provision states, in part:

> (b) ATVs or trail bikes operated on the trail will comply with maximum decibel limit established by law.

> (c) Adequate parking exists or will be developed for the type of trail being proposed and the number of expected riders.

> (d) *The bureau [of trails] has given due consideration to local planning and zoning ordinances. . . .*

> (f) The bureau has given due consideration to local noise and obnoxious use ordinances. . . .

> (i) The [proposed trail] includes a monitoring and response system designed to detect and correct adverse environmental impacts.

RSA 215-A:43, II (b)-(d), (f), (i) (emphasis added). No such two-tiered review process exists for the creation of OHRV trails on private land.

The statutory scheme further provides an opportunity for public notice and public input before a trail can be created on State land. RSA 215-A:43, III directs the bureau of trails (bureau), the administrative body overseeing the trail system, to "hold at least one meeting to inform the public and local cities and towns of the plan and layout for a proposed ATV or trail bike trail . . . and to provide an opportunity for the public to

comment." Once again, no similar protection is provided to the public when an OHRV trail is to be created on private land.

Given that the statutory scheme provides a host of safeguards for the establishment of OHRV trails on State-owned land, while affording no corresponding safeguards for trails on private land, we cannot conclude that the statute sets forth a detailed and comprehensive statutory scheme governing OHRV trails on private land, nor can we conclude that the legislature intended to preempt the town's ability to subject OHRV trails on private land to site plan review. *Cf. Arthur Whitcomb*, 141 N.H. at 406 (inferring intent to preempt field from the existence of a comprehensive and detailed statutory scheme). Had the legislature intended to preclude towns from exercising their zoning and planning authority, it could have done so expressly, *see JTR Colebrook*, 149 N.H. at 771-72, or, at a minimum, could have been clearer in manifesting that intent, *see Baines*, 148 N.H. at 630. "Absent a clear manifestation of legislative intent to preempt a field, the municipality may enact an ordinance which neither conflicts with State legislation nor is itself unreasonable." *Corey v. Town of Merrimack*, 140 N.H. 426, 428 (1995) (quotation and brackets omitted).

Despite the arguments raise by the defendants, DRED, and the association, we do not believe that the statute's silence regarding trails on private land can be reconciled with the alleged intent of the legislature to exempt those lands from review altogether. Given that the statute explicitly directs the bureau to consider site requirements, as well as local zoning and planning ordinances, when creating trails on State land, *see* RSA 215-A:43, II (a)-(cc), finding the chapter to be preemptive concerning private land would strain the bounds of logic. We find it more plausible that the legislature remained silent, not because it intended that private lands should escape review, but rather because it anticipated that local land use ordinances would properly fill that void. *Cf. Applied Chemical Technology v. Town of Merrimack*, 126 N.H. 45, 47 (1985) (rejecting claim that local regulation compensates for failure of State scheme to consider local economic effects of hazardous waste treatment facility when the statute provided two mechanisms for local landowners to protect their economic interests). To hold otherwise would result in a disjointed system of trail creation in which zoning ordinances are taken into account on one hand, while being wholly ignored on the other. We will not interpret the statutory scheme to yield this seemingly illogical result. *See Appeal of Coastal Materials Corp.*, 130 N.H. 98, 105 (1987).

*II. Counterarguments*

The defendants, along with DRED and the association, raise additional arguments in support of preemption. We address each argument in turn.

*A. The Public/Private Distinction*

The defendants attempt to justify the discrepancy in treatment between public and private lands. Echoing the trial court's concerns, the defendants first argue that because "[t]he OHRV Act encourages private property owners to commit their property to the state OHRV trail system," requiring site plan review "would have a chilling effect, and it would discourage property owners from opening their property to public use." We do not find this argument to be persuasive. While the creation of trails confers a benefit on the public by making more land available for OHRV use, *see Lorette*, 140 N.H. at 212, we find no evidence in the statute that the legislature meant for this benefit to supplant other equally important benefits derived from planning and zoning regulations. *See, e.g.*, RSA 674:17, I (Supp. 2003) (noting that the purposes of zoning ordinances are, among other things, to promote general health and welfare, prevent the overcrowding of land, and assure proper use of natural resources). To the contrary, that the chapter mandates zoning and planning ordinances be considered when establishing trails on public land, militates against finding that the legislature intended to exempt private land from similar treatment. As the town asserts, the two-tiered screening process indicates that "the legislature recognized the impact of OHRV and ATV use on land," and its "potential for harm." Because the town's interpretation is equally reasonable, no "clear manifestation" of legislative intent to preempt local site plan review exists. *Corey*, 140 N.H. at 428.

*B. RSA 215-A:15*

Both the defendants and DRED next rely upon RSA 215-A:15 (2000) to bolster their claims of preemption. The provision states, in relevant part: "With bylaws or ordinances any town or city may regulate the operation of OHRVs within its limits, providing they do not conflict with provisions of this chapter." RSA 215-A:15, I. The defendants argue that this provision does not undermine the preemptive status of RSA chapter 215-A, but rather complements it. Because bylaws and ordinances of the town are otherwise preempted, they argue that RSA 215-A:15 merely creates an exception, allowing the town to regulate certain aspects of OHRV use that do not conflict with the statute. *See Arthur Whitcomb*, 141 N.H. at 407-08.

Further relying upon RSA 215-A:15, DRED argues that if the town retains the ability to conduct site plan review, this provision would be unnecessary. Additionally, DRED argues that the provision permits towns to "regulate the *operation* of OHRVs within its limits," RSA 215-A:15, I, allowing towns to regulate only the general condition of OHRV operation such as hours of operation and noise, not the site of OHRV trails themselves.

We do not find these arguments persuasive. Examining the entire statutory scheme, we do not find RSA 215-A:15, I, to be an unnecessarily duplicative provision. Assuming without deciding that the legislature meant for RSA chapter 215-A to preempt local regulation of OHRV trails on State land, RSA 215-A:15, I, could, in that case, be understood as an exception to preemption, delegating to towns the ability nonetheless to regulate the operation of OHRVs. *See Casico v. City of Manchester*, 142 N.H. 312, 317 (1997); *see also Arthur Whitcomb*, 141 N.H. at 408. As the commissioner of DRED stated in a letter to the town's attorney, in regulating the "operation" of OHRVs, "a municipality . . . could . . . regulate activities such as ancillary uses associated with the trails (i.e., picnic areas or rest areas and facilities), the hours during which ATVs could be operated in the municipality, and any special events or commercial activities that exist in addition to the ATV trail." That this provision may limit a town's authority to act when OHRV trails are created on public land does not compel us to declare that RSA chapter 215-A preempts site plan review of trails on private land. Reviewing the statutory scheme as a whole, we remain unable to discern a clear manifestation of legislative intent to preempt local regulation of trails on privately-owned property. *Cf. Corey*, 140 N.H. at 428.

## C. Remaining Claims

Finally, the association contends that there are sufficient facts in the record to support the trial court's ruling. Given, however, that we are the final arbiter of legislative intent, *Whitcomb*, 141 N.H. at 405, the sufficiency of the facts before the trial court does not change our analysis.

We decline to address the remaining arguments concerning preemption raised by the defendants, DRED, and the association because they are either cursory in nature, or without merit. *See State v. Higgins*, 149 N.H. 290, 302 (2003).

*Reversed and remanded.*

DALIANIS and DUGGAN, JJ., concurred.