Belknap
No. 2003-421

NATHANIEL S. THAYER

v.

TOWN OF TILTON

Argued: May 19, 2004
Opinion Issued: November 30, 2004

*Charles A. Russell*, of Concord, by brief and orally, for the petitioner.

*Gallagher, Callahan & Gartrell, P.A.*, of Concord (*Donald E. Gartrell* and *James D. Kerouac* on the brief, and *Mr. Gartrell* orally), for the respondent.

*Susan Slack*, of Concord, by brief, for the New Hampshire Municipal Association, as *amicus curiae*.

*Kelly A. Ayotte*, attorney general (*Jennifer J. Patterson*, senior assistant attorney general, on the brief memorandum), for the State, as *amicus curiae*.

DUGGAN, J. The petitioner, Nathaniel S. Thayer, appeals an order of the Superior Court (*Perkins*, J.) dismissing his petition for declaratory judgment against the respondent, Town of Tilton (town). He argues that: (1) the trial court erred in determining that his petition was barred by the doctrine of laches; (2) State and federal law preempted the town's authority to regulate the use of sludge; and (3) his preexisting State approval exempted him from the town's subsequently-enacted regulations.

We reverse the dismissal of the petition and remand for entry of judgment for the town on the merits.

The following facts were found by the trial court or are evident from the record. The petitioner owns a parcel of land in Tilton. He arranged with Bio Gro, a division of Wheelabrator Clean Water Systems, Inc., to stockpile and spread municipal sewage waste biosolids (sludge) on his property. In June 1997, Bio Gro filed a permit application with the New Hampshire Department of Environmental Services (DES), in which it indicated that Class B sludge would be used and "no other permits or approvals are required" to spread the sludge. On August 5, 1997, DES notified Bio Gro by letter that a site permit was not needed for the project, although there were additional issues that needed to be addressed before the project could move forward.

Pursuant to DES regulations, Bio Gro arranged a public informational hearing to be held in Tilton on August 28, 1997. Prior to the hearing, the Tilton Board of Selectmen (Board) voted to obtain the advice of town counsel on issues raised by the petitioner's project. On August 29, town counsel wrote to Bio Gro stating that the proposed project would require approval by the town under the town's zoning ordinances, site plan regulations and RSA 155-E:5 (2002). On September 25, 1997, the Board unanimously adopted an ordinance regulating the use of sludge in the town, limiting the use to Class A sludge. Neither the petitioner nor Bio Gro filed a request for rehearing or appeal of this action.

Subsequent to the Board's adoption of the ordinance, Bio Gro requested approval of the project from the town's zoning board of adjustment (ZBA) and planning board. In October 1997, the ZBA and the planning board approved the project subject to compliance with all local, State and federal regulations, including the new sludge ordinance. Neither the petitioner nor Bio Gro filed a request for rehearing or appeal.

At a town meeting on March 18, 1998, the town voted to ratify Article 13, which tracked the language of the ordinance that the Board adopted on September 25, 1997. On October 9, 2001, the petitioner filed for declaratory judgment. The trial court dismissed the petition based on its finding that the petitioner's four-year delay in filing triggered application of the doctrine of laches.

*I. Doctrine of Laches*

■■■ "Laches is an equitable doctrine that bars litigation when a potential plaintiff has slept on his rights." *Town of Seabrook v. Vachon Management,* 144 N.H. 660, 668 (2000) (quotation omitted). Ascertaining whether the doctrine of laches applies is not a mere matter of time, but is

principally a question of the inequity of permitting the claim to be enforced. *Id.* "Because it is an equitable doctrine, laches will constitute a bar to suit only if the delay was unreasonable *and* prejudicial." *Id.* (emphasis added; quotation omitted). "We consider four factors in our analysis: (1) the knowledge of the plaintiffs; (2) the conduct of the defendants; (3) the interests to be vindicated; and (4) the resulting prejudice." *Appeal of City of Laconia*, 150 N.H. 91, 93 (2003) (quotations omitted). The trial court has wide latitude in determining whether circumstances justify application of the doctrine of laches; unless it is unsupported by the evidence or erroneous as a matter of law, we will not overturn its determination. *See In the Matter of State ex rel. Reitenour & Montgomery*, 148 N.H. 358, 362 (2002).

▉ "The party asserting laches bears the burden of proving both that the delay was unreasonable and that prejudice resulted from the delay." *Seabrook*, 144 N.H. at 668 (quotation omitted). In this case, the trial court made no finding of prejudice to the town. Instead, the trial court based its decision on the petitioner's knowledge in 1997 and his failure to provide a sufficient explanation for the delay in filing suit. On appeal, the town argues that there is prejudice based solely upon its interest in immediately addressing challenges to its enactments. Although the town may have such an interest, it alone is insufficient to support a finding of prejudice in this case. *Cf.* RSA 31:126 (2000) (any claim of invalidity of municipal legislation for failure to follow statutory enactment procedure must be asserted within five years of its enactment); RSA 31:129 (2000) (limitation does not affect claim of invalidity based on substance of municipal legislation). We therefore reverse the trial court's finding that this action was barred by the doctrine of laches.

## II. Preemption

The petitioner next argues that federal and State laws preempt the town's adoption of the ordinance regulating the use of sewage sludge. Although the trial court did not reach this issue, we exercise our discretion to address it given that it has been fully briefed and because the proper interpretation of a statute is a question of law for this court to decide. *See Monahan-Fortin Properties v. Town of Hudson*, 148 N.H. 769, 771 (2002).

When construing a statute, we first examine its language and, where possible, we ascribe the plain and ordinary meaning to the words used. *Id.* We must keep in mind the intent of the legislation, which is determined by examining the construction of the statute as a whole, and not simply by

examining isolated words and phrases found therein. *JTR Colebrook v. Town of Colebrook*, 149 N.H. 767, 770 (2003).

██ "It is well settled that towns cannot regulate a field that has been preempted by the State." *Id.* (quotation omitted). The preemption doctrine flows from the principle that municipal legislation is invalid if it is repugnant to, or inconsistent with, State law. *Town of Hooksett v. Baines*, 148 N.H. 625, 627 (2002). Municipal legislation is preempted if it expressly contradicts State law or if it runs counter to the legislative intent underlying a statutory scheme. *JTR Colebrook*, 149 N.H. at 770. We infer an intent to preempt a field when the legislature enacts a comprehensive, detailed regulatory scheme. *Town of Lyndeborough v. Boisvert Properties*, 150 N.H. 814, 817 (2004).

The petitioner argues that the town ordinance prohibiting the use of Class B sludge is preempted by RSA chapter 485-A (2001). In contrast, the town argues that the ordinance is valid because federal and State law expressly permit local government regulation of sludge through health and land use ordinances. *See* 40 C.F.R. § 501.1(i) (2003); N.H. ADMIN. RULES, Env-Ws 801.02(e) (1999). The State also argues that municipal regulation of sludge-related activities is permitted under RSA chapter 147 (1996) to the extent it does not conflict with the DES sludge management rules, N.H. ADMIN. RULES, Env-Ws 800 (1999). We agree that the ordinance is not preempted by federal or State law.

The ordinance was adopted under RSA 147:1, I (1996), which gives the town's health officers the power to "make regulations for the prevention and removal of nuisances, and such other regulations relating to the public health as in their judgment the health and safety of the people require." The Tilton ordinance provides, in relevant part, that:

> The spraying or spreading of septage and sewage sludge . . . onto the land surface . . . is prohibited in the Town of Tilton unless said sewage sludge meets the following requirements:
>
> (1) The pollutant concentrations contained [in] 40 CFR 503.13(b)(3);
> (2) The Class A pathogen reduction requirements contained in 40 CFR 503.32(a); and
> (3) One of the vector attraction reduction requirements contained in 40 CFR 503.33(b)(1) through 503.33(b)(8).

The ordinance thus permits the use of Class A sludge, as defined by State and federal regulations, while prohibiting the use of other types of sludge.

■ We first consider the comprehensiveness of the statutory scheme to determine whether the legislature intended to supersede local regulation. *See N. Country Envtl. Servs. v. Town of Bethlehem*, 150 N.H. 606, 611 (2004). Absent a clear manifestation of legislative intent to preempt a field, a municipality may enact an ordinance that neither conflicts with State legislation nor is itself unreasonable. *Lyndeborough*, 150 N.H. at 819.

Under the federal Clean Water Act, the Environmental Protection Agency has the authority to approve state sludge management programs. 33 U.S.C. § 1345 (2000); 40 C.F.R. § 501.1(b). States must meet the minimum requirements set forth under the federal regulations to gain approval. 40 C.F.R. § 501.1(c). The regulations provide that:

> Nothing in this part precludes a State or political subdivision thereof ... from adopting or enforcing requirements established by State or local law that are more stringent or more extensive than those required in this part or in any other federal statute or regulation.

*Id.* § 501.1(i).

In accordance with the federal scheme, the State legislature has given DES the authority to establish a permit system to regulate the removal, transportation and disposal of sludge. RSA 485-A:4, XVI-b (2001). "Sludge" is defined as "the solid or semisolid material produced by water and wastewater treatment processes." RSA 485-A:2, XI-a (2001). In enacting RSA chapter 485-A, the legislature stated: "[T]he department shall, in the administration and enforcement of this chapter, strive to provide that all sources of pollution within the state shall be abated ... to such degrees as shall be required to satisfy the provisions of state law or applicable federal law, *whichever is more stringent.*" RSA 485-A:3 (2001) (emphasis added). In 1997, the only statutory provisions governing the management of sludge involved the establishment of the permit system and a pilot program for random on-site testing of sludge samples to ensure compliance with State and federal regulations. *See* RSA 485-A:4, XVI-a (Supp. 1997) (authorizing the establishment of a permit system); RSA 485-A:6, X-a (1992) (giving DES rulemaking authority to establish requirements for permits); Laws 1997, 209:1 (establishing pilot program).

Under the rulemaking authority granted by RSA 485-A:6, DES adopted regulations governing sludge management. *See* N.H. ADMIN. RULES, Env-Ws 800 (1996). The regulations in effect in 1997 provided requirements for notifying the municipality and other affected parties prior to applying sludge to any land, *see* N.H. ADMIN. RULES, Env-Ws 803.01 (1996), holding a public meeting, *see* N.H. ADMIN. RULES, Env-Ws 803.02 (1996),

obtaining a sludge quality certificate, *see* N.H. ADMIN. RULES, Env-Ws 806.11 (1996), and establishing minimum buffer areas and other site operation requirements, *see* N.H. ADMIN. RULES, Env-Ws 806.08 (1996). Under the heading "Applicability," the regulations provided that:

> Nothing in these rules shall be construed to modify or lessen the powers conferred upon local authorities by health and land use enabling statutes, provided however that in all instances the requirements of these rules shall be considered as minimum.

N.H. ADMIN. RULES, Env-Ws 801.02(e) (1996). Since 1997, DES has adopted additional requirements for soil testing before and after land application of sludge, as well as record keeping and reporting requirements. N.H. ADMIN. RULES, Env-Ws 806.10, 806.11, 806.12 (1999).

The petitioner argues that this case is similar to cases in which we have held that a detailed and comprehensive statutory scheme preempted local regulations. *See, e.g., Public Serv. Co. v. Town of Hampton*, 120 N.H. 68 (1980); *Casico v. City of Manchester*, 142 N.H. 312 (1997). We have recognized, however, that even a comprehensive and detailed State regulatory scheme can authorize additional municipal regulation. *N. Country Envtl. Servs.*, 150 N.H. at 615; *Casico*, 142 N.H. at 316.

In *JTR Colebrook*, we held that the State Indoor Smoking Act, RSA 155:64-:77 (2002), constitutes a comprehensive and detailed regulatory scheme that authorizes additional municipal regulation in certain limited circumstances. *JTR Colebrook*, 149 N.H. at 770-71. The town argued that RSA 155:77 authorizes municipal regulation of smoking in restaurants to protect the public health. *Id.* at 770. RSA 155:77 states that "[n]othing in this subdivision shall be construed to permit smoking where smoking is prohibited by any other provision of law or rule relative to fire protection, safety and sanitation." We interpreted the provision according to its plain meaning and held that it permits municipal regulation of smoking only with respect to fire protection, safety and sanitation, not with respect to public health. *JTR Colebrook*, 149 N.H. at 771; *see also N. Country Envtl. Servs.*, 150 N.H. at 617 (narrowly construing provision of RSA 149-M:9 (Supp. 2003) that authorizes municipal regulation of the location of solid waste management facilities). We noted that the legislature could have chosen to authorize municipalities to enact stricter no-smoking standards to protect the public health, but did not. *Id.* at 771-72.

In this case, the State regulatory scheme enacted under RSA chapter 485-A is not so comprehensive and detailed as to suggest a legislative intent to preempt all municipal regulation of sludge. Moreover,

the DES regulations specifically state that "[n]othing in these rules shall be construed to modify or lessen the powers conferred upon local authorities by health and land use enabling statutes." N.H. ADMIN. RULES, Env-Ws 801.02(e) (1999). Unlike the narrower provision at issue in *JTR Colebrook*, this language authorizes additional municipal regulation with respect to protecting public health. *See JTR Colebrook*, 149 N.H. at 771. Had the legislature intended to preclude towns from regulating the use of sludge, it could have done so expressly. *See Lyndeborough*, 150 N.H. at 819. Because the legislature has not manifested an intent to preempt this field, the town ordinance is valid if it neither conflicts with State legislation nor is itself unreasonable. *See id.*

We next consider whether the town ordinance directly conflicts with State law. *See id.* The sludge quality certification requirements incorporate the federal classification standards and permit the use of either Class A or Class B sludge. N.H. ADMIN. RULES, Env-Ws 802.06, 802.07, 807.03 (1999). As discussed above, DES did not intend to "modify or lessen the powers conferred upon local authorities by health and land use enabling statutes" when it adopted the sludge management rules. *See* N.H. ADMIN. RULES, Env-Ws 801.02(e) (1996). We conclude that there is no direct conflict between the State regulations and the town's decision to adopt more stringent sludge quality requirements for the use of sludge within the town. Likewise, we hold that the ordinance is not an unreasonable exercise of the Board's power to protect the public health and prevent nuisances under RSA 147:1. Because the ordinance does not contradict State law or run counter to the legislative intent underlying the statutory scheme, we hold that the ordinance is not preempted by State law. *See JTR Colebrook*, 149 N.H. at 770.

### III. Vesting of Rights

Finally, the petitioner argues that the town ordinance constitutes a retrospective law under Part I, Article 23 of the State Constitution and that the State's approval of the project gave him a vested right that predated the town's adoption of the ordinance. Our common law standard for vesting provides that:

An owner, who, relying in good faith on the absence of any regulation which would prohibit his proposed project, has made substantial construction on the property or has incurred substantial liabilities relating directly thereto, or both, acquires a vested right to complete his project in spite of the subsequent adoption of an ordinance prohibiting the same.

*AWL Power v. City of Rochester*, 148 N.H. 603, 606 (2002) (quotation and brackets omitted). "The property owner who claims a vested right bears the burden of proving all necessary elements establishing that right." *Dow v. Town of Effingham*, 148 N.H. 121, 130 (2002).

 The petitioner argues that the letter from DES, dated August 5, 1997, signified State approval of the project, thus giving him a vested right to proceed. During trial, the petitioner's representative testified that he would not have bought the property if the ordinance had been in effect at that time. However, money spent for the purchase of land and expenditures incidental to obtaining approval for the project are insufficient to create a vested right. *See Dow*, 148 N.H. at 130; *Piper v. Meredith*, 110 N.H. 291, 299 (1970). Even assuming that the DES letter constituted approval of the project, and viewing all of the evidence in the light most favorable to the petitioner, no reasonable person could find that the petitioner incurred a substantial liability related to the project prior to September 25, 1997, when the Board adopted the sludge ordinance. We hold that the petitioner failed to meet his burden of proving that he obtained a vested right to use Class B sludge on his land prior to the town's adoption of the ordinance. Because we hold that the petitioner did not have a vested right, the petitioner cannot claim that the ordinance constitutes a retrospective law under Part I, Article 23 of the State Constitution. *See Tyler Road Dev. Corp. v. Town of Londonderry*, 145 N.H. 615, 616-17 (2000) ("Every statute, which takes away or impairs vested rights, acquired under existing laws ... must be deemed a retrospective law." (Quotation omitted)).

*Reversed and remanded.*

BRODERICK, C.J., and NADEAU, DALIANIS and GALWAY, JJ., concurred.