Hillsborough-southern judicial district
No. 2005-014

BLAGBROUGH FAMILY REALTY TRUST

v.

TOWN OF WILTON

Argued: September 29, 2005
Opinion Issued: February 14, 2006

*Cleveland, Waters and Bass, P.A.*, of Concord (*William B. Pribis* and *Mark S. Derby* on the brief, and *Mr. Pribis* orally), for the plaintiff.

*Fernald, Taft, Falby & Little, P.A.*, of Peterborough (*Silas Little* on the brief and orally), for the defendant.

*Wiggin & Nourie, P.A.*, of Manchester (*Patricia M. Panciocco* and *Gregory E. Michael* on the brief, and *Mr. Michael* orally), for the intervenor, A & T Forest Products, Inc.

BRODERICK, C.J. The plaintiff, the Blagbrough Family Realty Trust, appeals a decision of the Superior Court (*Groff*, J.) that the defendant, the

Town of Wilton (town), was not precluded by State law from amending its zoning ordinance. We affirm.

In 2002, the town's planning board approved a two-lot subdivision of property owned by the intervenor, A & T Forest Products, Inc., abutting the plaintiff's property. The subdivision provided for a shared driveway with two culverts. At the time of the approval, the town's zoning ordinance provided that no structure could be located less than 200 feet from open water and perennial streams or less than 150 feet from intermittent streams, the 100 year floodplain or any wetland. WILTON, N.H. ZONING ORDINANCE § 14.3.3 (2002). A structure was defined as "[a]ny construction, erection, assemblage or other combination of materials upon the land which is made in such a manner as to imply that it will remain in position indefinitely or which in fact remains on the land for a period of time in excess of thirty (30) days." *Id.* § 3.1.31 (2002).

The plaintiff appealed to the town's zoning board of adjustment (ZBA), arguing that the approval was illegal because it permitted the installation of structures, *i.e.*, the culverts, in the driveway within the protected setback from a wetland. At the ZBA hearing, a letter from the town's board of selectmen was presented stating that the board, as the enforcement agency for the zoning ordinance, had never treated culverts as structures. The ZBA determined that pursuant to the "spirit and intent of the Wilton Zoning Ordinance, neither a driveway nor a culvert is considered a structure" and upheld the planning board's approval of the subdivision.

The plaintiff appealed the ZBA's decision to the superior court. Subsequent to the appeal but before the case was heard, the town amended its zoning ordinance to specifically exclude culverts from the definition of "structure." The superior court denied the appeal, ruling that the "time of decision" rule applied, thereby mandating that the case be decided according to the ordinance in effect at that time. The plaintiff appealed to this court and we affirmed by order the superior court's decision, but remanded the case to determine whether the town was precluded by State law from amending its zoning ordinance to exempt driveways and culverts from the definition of "structure." On remand, the superior court determined that the ordinance as amended does not conflict with a State statute or regulation and that State law does not preempt it.

On appeal, the plaintiff argues that the trial court erred: (1) when it ruled that the driveway, culverts and outfall pipes were not "structures" within the meaning of the town's ordinance and that the amendments to the ordinance were not preempted by State law; and (2) when it declined to consider the argument that the driveway, culverts and outfall pipes were

initially constructed pursuant to a logging permit that forbade retention of the roads and culverts in the wetlands setback.

"The state preemption issue is essentially one of statutory interpretation and construction—whether local authority to regulate under a zoning enabling act is preempted by state law or policy." *N. Country Envtl. Servs. v. Town of Bethlehem*, 150 N.H. 606, 611 (2004) (quotation and ellipsis omitted). "State law preempts local law ... when there is an actual conflict between State and local regulation." *Id.* "A conflict exists when a municipal ordinance or regulation permits that which a State statute prohibits or vice versa" or when a local ordinance "frustrates the statute's purpose." *Id.* "We infer an intent to preempt a field when the legislature enacts a comprehensive, detailed regulatory scheme." *Town of Lyndeborough v. Boisvert Properties*, 150 N.H. 814, 817 (2004) (quotation omitted). "We are the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole." *Id.*

The plaintiff argues that the town's amendment to its zoning ordinance is preempted by State law because it created a definition of "structure" that is less protective than the definition of "structure" contained in RSA chapter 482-A (2001 & Supp. 2005). According to the plaintiff, because RSA chapter 482-A comprehensively regulates development in and adjacent to the waters and wetlands of the State, the preemption doctrine requires the town to include the proposed culverts within its definition of "structure" just as the State did explicitly in RSA 482-A:2, IX and New Hampshire Code of Administrative Rules, Env-Wt 101.87. Otherwise, the plaintiff contends, the town will have enacted a regulation that frustrates the legislative intent of RSA chapter 482-A to protect the public health and the waters of the State.

"Wetlands" is defined in RSA 482-A:2, X as "an area that is inundated or saturated by surface water or groundwater at a frequency and duration sufficient to support ... a prevalence of vegetation typically adapted for life in saturated soil conditions." The waters and adjacent areas to which chapter 482-A applies is defined as follows:

> Wherever fresh water flows or stands and in all areas above tidal waters .... [RSA chapter 482-A] shall apply ... to all surface waters of the state as defined in RSA 485-A:2 which contain fresh water, including the portion of any bank or shore which borders such surface waters, and to any swamp or bog subject to periodical flooding by fresh water including the surrounding shore.

RSA 482-A:4, II. "Surface waters of the state" are defined as "perennial and seasonal streams, lakes, ponds, and tidal waters within the jurisdiction of the state, including all streams, lakes, or ponds bordering on the state, marshes, water courses, and other bodies of water, natural or artificial." RSA 485-A:2, XIV (2001). "Structure" is defined as including but not limited to "fence, dock, breakwater, post, pile, building, bridge, culvert, and wall." RSA 482-A:2, IX; *see also* N.H. ADMIN. RULES, Env-Wt 101.87.

The town's amended zoning ordinance provides that "[n]o residence, building, structure, feed lot, outflow from building drainage, septic system or its containment area shall be located less than two hundred (200) feet from open water and perennial streams nor less than one hundred fifty (150) feet from intermittent streams, the hundred year flood plain ... or any wetland." WILTON, N.H. ZONING ORDINANCE § 14.3.3 (2003). "Structure" is then further defined to exclude "driveways, fences, stonewalls, mailboxes, culverts, and drainage measures approved by the Planning Board as part of a subdivision or site plan." *Id.* § 3.1.31 (2003).

The superior court found no conflict between the two definitions of "structure," concluding that the town's ordinance and the State statute may be applied without conflict because they regulate two different areas. As the court stated, RSA chapter 482-A

> regulates the construction of a structure in a wetlands area while the Town ordinance regulates the construction of a structure within a *setback* from such wetlands. These two definitions may be applied harmoniously. A person would be permitted to construct a culvert within a setback from state waters, but would not be permitted to build a culvert in a wetland.

In addition, the superior court found that the ordinance, which regulates the construction of a structure within a setback, does not conflict with RSA chapter 482-A, which regulates the construction of a structure within a wetland. The court found "no indication that RSA 482-A is to be exclusive. There is no language in the statute to this effect and the state scheme is not so pervasive or comprehensive that it would preclude municipal regulation." Finally, the court stated that the ordinance does not frustrate the purpose of RSA chapter 482-A to protect and preserve submerged lands and wetlands from despoliation and unregulated alteration, *see* RSA 482-A:1, because "[t]he ordinance's definition of 'structure' does not interfere with the regulation of submerged lands or wetlands, but is only applicable to a setback from a wetland."

■ Having reviewed the applicable statutes and regulations, we find no error in the superior court's ruling. Assuming, without deciding, that the

State has preempted local regulation *in* wetlands, municipalities may adopt local ordinances to further wetland protection in areas outside the State's regulation. We disagree with the plaintiff that the State has defined the term "adjacent" in regards to wetlands to include the setback areas covered by the town's zoning ordinance. Accordingly, local regulation within the setback area does not conflict with the State's jurisdiction over wetlands or interfere with the State's purpose in regulating wetlands.

■ We also disagree with the plaintiff's argument that the State regulates in the setback area because administrative rules under RSA chapter 482-A contemplate an application process for, and regulation of, projects "within 100 feet of the highest observable tide line." N.H. ADMIN. RULES, Env-Wt 303.04(b). The term "highest observable tide line" is defined in RSA 483-B:4, XVII(c) (2001 & Supp. 2005) for *coastal* waters as "a line defining the furthest landward limit of tidal flow." Other than for coastal waters, nowhere in the statutes or regulations cited by the plaintiff does the State indicate that it intends to regulate any lands outside the immediate area of wetlands. Consequently, we hold that the State has not extended jurisdiction into the setback area as defined by the town, and thus there is no conflict between the town's zoning ordinance and the State's statutes and regulations.

The plaintiff next argues that the superior court erred in declining to consider its argument that the driveway, culverts and outfall pipes were initially constructed pursuant to a logging permit that forbade retention of the roads and culverts in the setback area. Following remand from this court, the parties filed memoranda with the superior court addressing the single issue remanded: whether the town's amendment to its zoning ordinance was unlawful. In its memoranda, the plaintiff raised, for the first time, the issue regarding the logging permit. This issue was never raised in the plaintiff's appeal to the ZBA, its motion to reconsider, its first appeal to the superior court or its appeal to this court.

■ RSA 677:3, I (1996) provides that

> [n]o appeal from any order or decision of the zoning board of adjustment . . . shall be taken unless the appellant shall have made application for rehearing . . . and, when such application shall have been made, no ground not set forth in the application shall be urged, relied on, or given any consideration by a court unless the court for good cause shown shall allow the appellant to specify additional grounds.

"The statutory scheme is based upon the principle that the local board should have the first opportunity to pass upon any alleged errors in its

decisions so that the court may have the benefit of the board's judgment in hearing the appeal." *Dziama v. City of Portsmouth*, 140 N.H. 542, 544 (1995) (quotation omitted). If a timely motion for rehearing fails to set forth all alleged errors with respect to the ZBA's decision on the merits, the party may not raise those grounds in a later appeal unless the court for good cause shown orders otherwise. *See id.* Because this issue was not properly raised, the superior court did not err in refusing to consider it.

*Affirmed.*

DALIANIS, DUGGAN and GALWAY, JJ., concurred.